# EXHIBIT B

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STATE OF NEW YORK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18-cv-0773 |
| | ) | |
| ENVIRONMENTAL DEFENSE FUND, | ) | Hon. Reggie Walton |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION | ) | |
| AGENCY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants the United States Environmental Protection Agency and Andrew Wheeler in his official capacity as the Acting Administrator thereof (collectively "EPA" or the "United States") respond as follows to the Plaintiffs' First Set of Interrogatories.

## GENERAL OBJECTION

1.     The United States objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or any other applicable privilege or doctrine.  The United States further objects to the Interrogatories to the extent that they seek information concerning employees or contractors of the United States that the United States is required or authorized not to produce pursuant to 5 U.S.C. § 552a (Privacy Act) or any other applicable provision of law.  Where such information is withheld or redacted from a response, the United States will so state within the response and provide a supporting privilege log consistent with Fed. R. Civ. P. 26(b) and the Order

Regarding Discovery Procedure entered in this case on September 27, 2018 (Dkt. No. 38) ("Discovery Order").

## SPECIFIC OBJECTIONS TO DEFINITIONS

2.      The United States objects to the definitions of the terms "Document" and "documents" in Plaintiffs' First Set of Interrogatories to the extent that they encompass materials or information that are not discoverable, or that the parties are not required to preserve, collect, or produce pursuant to the Discovery Order.  The United States responds consistent with the terms of the Discovery Order.

3.      The United States objects to the definition of the terms "identify," "describe," "provide," and "explain" in Plaintiffs' First Set of Interrogatories to the extent that they request that the United States provide voluminous information in addition to the response to the question posed by each Interrogatory, including every single fact related to that response, and dates, sources, documents, and individuals related to each of those facts.  Such requests, which are unreasonably burdensome and not proportionate to the needs of this unreasonable delay case, also constitute at least five discrete subparts to each interrogatory, which would result in an exceedance of the maximum number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  The United States therefore responds only to the questions posed in each interrogatory.

4.      The United States objects to the definition of the term "Defendants' Disclosures" in Plaintiffs' First Set of Interrogatories to the extent that it instructs the United States to respond based upon the uncorrected version of the Initial Disclosures provided to Plaintiffs on October 31, 2018.  The United States responds based upon the corrected version that was provided on November 14, 2018.

2

## **SPECIFIC OBJECTIONS TO INSTRUCTIONS**

5.      The United States objects to Instruction No. 5 to the extent that it seeks knowledge, information, or materials that are not within EPA's possession, custody, or control.  As specified in Fed. R. Civ. P. 34(a), the United States responds with respect to knowledge, information, and materials in EPA's possession, custody, or control.

6.      The United States objects to Instruction No. 6 to the extent that it directs the United States to identify responsive documents by document control number.  No general control numbering system is used for all documents within the EPA offices involved in the actions at issue.  Instead, the United States will produce such materials consistent with the Discovery Order and identify Bates range(s) for review consistent with Fed. R. Civ. P. 33(d)(1).  The United States further objects to the remainder of Instruction No. 6, which requests voluminous, detailed information regarding unavailable materials contrary to Fed. R. Civ. P. 33 and the Discovery Order.  In addition, this portion of Instruction No. 6, which is unreasonably burdensome and not proportionate to the needs of this unreasonable delay case, also constitutes at least several discrete subparts that would exceed the maximum number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).

7.      The United States objects to Instruction Nos. 8 - 10 as unreasonably burdensome and not proportionate to the needs of this unreasonable delay case.  The requirements and means for asserting privilege claims and producing associated materials are specified in the Discovery Order and in Fed. R. Civ. P. 26(b)(5), which will ensure that Plaintiffs receive all non-privileged responsive information, as well as the information necessary for Plaintiffs to assess any privilege claim asserted.  The United States will respond consistent with Fed. R. Civ. P. 26(b)(5) and the Discovery Order.

## INTERROGATORIES

**1.     Identify and describe any actions EPA has taken specifically toward developing and issuing Existing Source Guidelines before and following promulgation of the 2016 New Source Rule.**

**RESPONSE**:  Without waiving its objections, the United States responds that EPA has

taken the following actions:

- On September 18, 2015, EPA proposed new source performance standards ("NSPS") for methane emissions from the oil and natural gas sector.  80 Fed. Reg. 56,593 (September 18, 2015).

- On March 10, 2016, EPA announced that it would initiate "a formal process to require companies operating existing oil and gas sources to provide information to assist in the development of comprehensive regulations to reduce methane emissions." https://blog.epa.gov/2016/03/10/epa-taking-steps-to-cut-methane-emissions-from-existing-oil-and-gas-sources/.  EPA refers to this as an "information collection request" or "ICR."

- On May 12, 2016, EPA finalized the NSPS for methane emissions from new and modified oil and natural gas sources ("2016 NSPS").  81 Fed. Reg. 35,824 (June 3, 2016).  The 2016 NSPS was immediately challenged in Court by fifteen states and six industry groups.  Petitioners challenged, among other things, EPA's authority to regulate methane emissions from the oil and natural gas sector.  *API v. EPA*, No. 13-1108 (D.C. Cir.).  The litigation is currently stayed pending EPA's review of the 2016 NSPS pursuant to Executive Order 13783 ("E.O. Review").

- Also on May 12, 2016, EPA issued the first draft of the ICR, which was available for public comment for 60 days.  81 Fed. Reg. 35,763, 35,764 (June 3, 2016).  On September 29, 2016, EPA published the second draft of the ICR for another 30 days of public comment. 81 Fed. Reg. 66,962 (September 29, 2016).  In November 2016, EPA issued the final ICR, which entailed sending the request to over 15,000 owners and operators within the oil and natural gas

industry.  In addition, EPA established a phone line and email account, the ICR help desk, to assist the ICR recipients with completing and returning the requested information. EPA also received numerous requests for an extension of the deadline for responding to the ICR, many of which EPA granted.

- On July 18, 2016, while working on the development and issuance of the ICR, EPA separately published in the Federal Register a request for information, seeking within 120 days "information on innovative technologies to accurately detect, measure, and mitigate emissions from the oil and natural gas industry" and "how these advanced monitoring technologies would be broadly applicable to existing sources."  *See* 81 Fed. Reg. 46,670, 46,671 (July 18, 2016).

- On March 7, 2017, EPA published a notice stating that it was withdrawing the ICR.  82 Fed. Reg. 12,817 (March 7, 2017).  As explained in the notice, "[t]he withdrawal is occurring because EPA would like to assess the need for the information that the Agency was collecting through these requests, and reduce burdens on businesses while the Agency assesses such need." *Id.*

- On March 28, 2017, the President signed Executive Order 13783 that, among other things, directed the EPA Administrator to review the 2016 NSPS "and, if appropriate, shall as soon as practicable, suspend, revise, or rescind the guidance, or publish for notice and comment proposed rules suspending, revising, or rescinding those rules."  82 Fed. Reg. 16,093, 16,096 (March 31, 2017).

- On April 4, 2017, EPA published a notice announcing that, pursuant to the March 28, 2017 Executive Order, it is initiating the E.O. Review and, "if appropriate, will initiate reconsideration proceedings to suspend, revise or rescind this rule."  82 Fed. Reg. 16,331 (April 4, 2017).

EPA has not taken any action specifically towards developing or issuing guidelines for

existing oil and natural gas sources since the Agency initiated the E.O. Review.  Because the E.O. Review could result in the suspension, revision, or rescission of the methane standards in the 2016 NSPS, thereby potentially affecting the substance of potential future guidelines for existing oil and natural gas sources, and/or eliminating or curtailing EPA's authority to issue such guidelines, EPA at this time does not intend to issue such guidelines or to take actions specifically toward developing and issuing such guidelines before completing the E.O. Review.

The United States further responds that at this time it does not intend to issue such guidelines or to take actions specifically toward developing and issuing such guidelines for the additional reason that, since the E.O. Review began, the Agency also has engaged in other administrative actions identified in its amended disclosures under Fed. R. Civ. P. 26(a).  In response to numerous administrative petitions and other requests by stakeholders seeking reconsideration of various aspects of the 2016 NSPS, EPA modified the NSPS in a final rule published at 83 Fed. Reg. 10,628 (March 12, 2018), and proposed additional modifications in a proposed rule published at 83 Fed. Reg. 52056 (October 15, 2018) ("October 2018 Proposed Amendments").  EPA anticipates that those modifications to the 2016 NSPS could materially affect the scope and content of potential future guidelines for existing oil and natural gas sources.

**2.      Identify the resources EPA has spent or has committed to spend gathering and evaluating data to develop Existing Source Guidelines.**

**RESPONSE**:  Without waiving its objections, the United States responds that EPA has not spent or committed to spend resources to gather and evaluate data to develop guidelines for methane emissions from existing oil and natural gas sources since EPA initiated the E.O. Review. The United States further refers the parties to its response to Interrogatory No. 1.

**3.      Describe the actions EPA needs to take and the information it has yet to obtain in order to issue Existing Source Guidelines.**

**RESPONSE**:  The United States specifically objects to Interrogatory No. 3 on the ground that it constitutes two different interrogatories: one directed to actions EPA allegedly needs to take, and one directed to information that EPA allegedly needs to obtain.  Without waiving its objections, the United States responds that, for the reasons explained in its response to Interrogatory No. 1, the Agency is not currently developing guidelines, and cannot at this point identify what information, if any, would be needed in the future to do so.  The United States further refers the parties to its response to Interrogatory No. 12.

4.      **Identify all Persons the Administrator consulted in the decision-making process that led to the withdrawal of the 2016 ICR.**

**RESPONSE**:  The United States specifically objects to Interrogatory No. 4 as unreasonably burdensome and not proportionate to the needs of this case.  Because the individual who served as the Administrator during the decision-making process for withdrawal of the ICR is no longer with the federal government, EPA would have to devote a significant amount of time and resources to develop a response, the accuracy of which the Agency could not reliably establish.  Equally important, communications between individuals during that decision-making process are not relevant to the subject matter of this case—EPA's alleged unreasonable delay in issuing guidelines for existing oil and natural gas sources.  The identities of individuals who communicated with the former Administrator do not speak to the factors established in *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ( "*TRAC*").  Moreover, the basis for EPA's withdrawal of the ICR was explained in the Federal Register notice announcing that withdrawal at 82 Fed. Reg. 12,817 (March 7, 2017).  Based on the foregoing objections, the United States declines to respond to Interrogatory No. 4.

5.      **Identify all Communications between any Person outside of EPA and the Administrator and/or EPA regarding the basis for withdrawal of the 2016 ICR prior to the Administrator deciding to withdraw the ICR.**

**RESPONSE**:  The United States specifically objects to Interrogatory No. 5 as unreasonably burdensome and not proportionate to the needs of this case for the same reasons articulated in response to Interrogatory No. 4.  Indeed, Interrogatory No. 5 attempts to impose an even greater burden than Interrogatory No. 4, as it attempts to elicit all communications between *any* person outside of EPA, without limitation, and *any* person within the Agency itself, again without limitation, regarding a topic that does not speak to the *TRAC* factors for the subject matter of this suit.  Furthermore, as noted in the United States' amended disclosures under Fed. R. Civ. P. 26(a), EPA articulated the basis for the Agency's withdrawal of the ICR in the Federal Register notice at 82 Fed. Reg. 12,817 (March 7, 2017).  Based on the foregoing objections, the United States declines to respond to Interrogatory No. 5.

      **6.**     **Identify the date(s) on which the Administrator and EPA first became aware of the basis for withdrawal of the 2016 ICR.**

**RESPONSE**:  The United States specifically objects to Interrogatory No. 6 as unreasonably burdensome and not proportionate to the needs of this case.  The individual who served as the Administrator during the decision-making process for withdrawal is no longer with the federal government.  There may be other EPA personnel who were involved in this process but have since left the Agency.  Further, numerous EPA personnel were involved in issuing, collecting information pursuant to, and withdrawing the ICR, and may have become aware of information relating to the basis for EPA's withdrawal of the ICR through different means and at different times.  Consequently, EPA would have to devote a significant amount of time and resources to developing a response, the accuracy of which the Agency could not reliably establish.  The United States also specifically objects to Interrogatory No. 6 because the date or dates on which individual EPA personnel became aware of the basis for the withdrawal, which is articulated in the Federal Register notice at 82 Fed. Reg. 12,817 (March 7, 2017), does not speak to the *TRAC* factors with

respect to the guidelines at issue in this case.  Based on the foregoing objections, the United States

declines to respond to Interrogatory No. 6.

**7.      In response to the March 1, 2017 letter from nine Attorneys General and the Governors of Mississippi and Kentucky "expressing concern with the burdens on businesses imposed by the impending request," identify whether EPA performed any analysis or assessment of the alleged burdens of the 2016 ICR, or of the regulatory costs and/or foregone benefits related to withdrawal of the 2016 ICR, prior to withdrawing it.**

**RESPONSE**:  The United States specifically objects to Interrogatory No. 7 to the extent it

implies that the merits of, or basis for the withdrawal of, the ICR are relevant to the claims in this

unreasonable delay case.  EPA further objects to Interrogatory No. 7 on the ground that it

constitutes two different interrogatories: one directed to analyses or assessments of burdens

imposed by the ICR, and one directed to costs or foregone benefits due to withdrawal of the ICR.

Without waiving its objections, the United States responds that no such analyses or assessments

were performed in response to the March 1, 2017 letter prior to withdrawing the ICR.  As noted in

the United States' amended disclosures under Fed. R. Civ. P. 26(a), EPA explained the basis for the

Agency's withdrawal of the ICR in the Federal Register notice announcing that withdrawal at 82

Fed. Reg. 12,817 (March 7, 2017).

**8.      Identify the Persons involved in any analysis or assessment identified in response to Interrogatory No. 7 and his/her role and/or duties in connection with any such analysis or assessment.**

**RESPONSE**:  The United States specifically objects to Interrogatory No. 8, because neither

the substantive merits of, nor the grounds for, withdrawal of the ICR are at issue in this

unreasonable delay case. Without waiving its objections, the United States responds that no

analysis or assessment was identified in response to Interrogatory No. 7.

**9.      Identify whether the Administrator or any EPA official consulted with any States who were not parties to the March 1, 2017 letter referenced in Interrogatory No. 7 regarding withdrawal of the ICR prior to withdrawing it.**

9

**RESPONSE**:  The United States specifically objects to Interrogatory No. 9 as unduly burdensome and not proportionate to the needs of this case because neither the substantive merits of, nor the grounds for, withdrawal of the ICR are at issue in this unreasonable delay case. Moreover, the individuals who served as the Administrator and certain other relevant EPA officials at the time of the ICR withdrawal are no longer with the federal government.  Consequently, EPA would have to devote substantial time and resources to developing a response, the accuracy of which the Agency could not reliably establish.  Based on the foregoing objections, the United States declines to respond to Interrogatory No. 9.

> **10.**    **Identify any plans EPA put into place at the time of the withdrawal of the ICR, steps EPA has taken since the withdrawal of the ICR, and the steps EPA still has to take, to assess the need for the information that was to be collected from the now-withdrawn ICR.**

**RESPONSE:**  The United States specifically objects to Interrogatory No. 10 on the ground that it constitutes three different interrogatories: one directed to plans allegedly put in place in March of 2017, one directed to steps allegedly taken since the 2016 ICR was withdrawn, and a third directed to future steps EPA allegedly has to take to assess the need for information.  Without waiving its objections, the United States responds that EPA had planned to assess the need for the information that was to be collected from the ICR at the time that the ICR was withdrawn.  *See* 82 Fed. Reg. 12,817 (March 7, 2017).  EPA has not taken such a step because, shortly after withdrawing the ICR, E.O. 13783 directed EPA to review the 2016 NSPS "and, if appropriate, . . . as soon as practicable, suspend, revise, or rescind the guidance, or publish for notice and comment proposed rules suspending, revising, or rescinding those rules."  82 Fed. Reg. at 16,096 (March 31, 2017).  Whether EPA will need any of the information requested under the now-withdrawn ICR to inform any potential future development and issuance of guidelines for existing oil and natural gas sources will depend

upon the substantive changes to the already-amended NSPS resulting from the E.O. Review and the October 2018 Proposed Amendments.  Therefore, EPA intends to complete these actions, which were identified in its amended disclosures under Fed. R. Civ. P. 26(a), before it can assess what (if any) additional information it may need.

**11.     Explain the basis for EPA's denial in its Answer of the assertion in paragraph 40 of Intervenor's Complaint that EPA has not taken any actions with respect to establishing Existing Source Guidelines since withdrawal of the ICR, see Answer at ¶ 40.**

**RESPONSE:**  Without waiving its objections, the United States responds that EPA has engaged in ongoing actions identified in its amended disclosures under Fed. R. Civ. P. 26(a), the results of which EPA anticipates could materially affect the establishment of future guidelines for existing oil and natural gas sources for the reasons articulated in response to Interrogatory No. 1.

**12.     Provide the amount of time EPA requires to accomplish each of the actions needed to promulgate Existing Source Guidelines and the date by which EPA could promulgate Existing Source Guidelines.**

**RESPONSE:**  Without waiving its objections, the United States responds that it is not promulgating guidelines for existing oil and natural gas sources at this time for the reasons articulated in response to Interrogatory No. 1.  The United States further responds that the actions EPA would need to take to do so, and the time needed to perform them, will depend upon the final outcome of the E.O. Review and the October 2018 Proposed Amendments.

Should EPA nonetheless be ordered to promulgate guidelines without regard to the outcomes of these two actions, EPA would first have to evaluate the information submitted under the ICR to determine whether that information is relevant, complete, and sufficient, or if additional information is necessary.  If that information were found to be sufficient, then the Agency estimates that, at minimum, it would require at least 19 months to issue existing source guidelines. This schedule is based on the following actions and the time that EPA estimates it would need to complete them:

- EPA evaluates the information received from the ICR and proposes the guidelines at issue (9 months); and

- After providing at least a 60-day comment period on the proposed guidelines and a hearing if requested, EPA evaluates the comments received and finalizes the guidelines (10 months).

Should EPA determine that it needs to collect additional information that would require the issuance of a new ICR, EPA estimates that, at a minimum, it would require 35 months to issue existing source guidelines.  This schedule is based on the following actions that EPA would need to take in addition to those identified above, and the time that EPA estimates it would need to complete those additional steps:

- EPA assesses its information needs, then prepares and publishes the first draft of an ICR (2 months);

- Following a required 60-day public comment period, and its review of the comments received, EPA revises and publishes a second draft of an ICR for another 30-day comment period (4 months);

- EPA will consider the comments received and submit the final ICR to OMB for approval (3 months);

- Assuming OMB approval, EPA would mail the OMB approved ICR to owners and operators in the oil and gas sector (1 month); and

- EPA receives all requested information (6 months).

Depending on the volume and complexity of information received from this hypothetical ICR, EPA may need more than 10 months to evaluate the information received and propose the guidelines at issue.

The United States further responds that, should the E.O. Review or the final action on the October 2018 Proposed Amendments effect additional substantive changes to the 2016 NSPS,

EPA's estimates would, of course, be subject to change.  EPA's rule making activities with regard to the E.O. Review and the October 2018 Proposed Amendments are ongoing, and the United States' response to Interrogatory No. 12 will be supplemented as appropriate.

**13.      For each instance in which EPA has, in the past, issued new source performance standards for new sources within a regulated industrial sector pursuant to sections 111(b) or 129 of the Clean Air Act, 42 U.S.C. §§ 7604(b) or 7629 [sic], describe with specificity the amount of time that passed between issuance of that standard and the issuance of the guidelines under section 111(d) for existing sources within that same industrial sector.**

**RESPONSE**:  The United States specifically objects to Interrogatory No. 13 as unreasonably burdensome and not proportionate to the needs of the case, to the extent that it seeks information regarding guidelines for existing sources for which EPA issued standards under Clean Air Act ("CAA") section 129, 42 U.S.C. § 7429.  Such information does not speak to the merits of this unreasonable delay case or a potential remedy, because unlike CAA section 111, CAA section 129 requires that existing source guidelines be included as part of new source performance standards, not issued separately.  *See* 42 U.S.C. § 7429(b)(1).  Moreover, the guidelines described in CAA section 129 include different elements than those described in CAA section 111.  *Id*.  The United States further objects to Interrogatory No. 13 to the extent that it seeks information regarding industrial sectors different from oil and natural gas.  No other industrial sectors are at issue in this case, and the requested information will not speak to the time required to prepare future guidelines for the oil and natural gas sector.  Guidelines for different industrial sectors may (or may not, in different cases) require the collection of different industry-specific information, and may entail analyses that differ substantially by Agency personnel with different industry-specific knowledge and experience. The United States therefore responds to Interrogatory No. 13 only with respect to guidelines for existing oil and natural gas sources.  Without waiving its objections, the United States responds that no such guidelines have been issued.

13

     **14.**    **If and to the extent EPA intends to rely on claimed lack of resources to justify its delay, identify the resources necessary to accomplish the actions needed to develop and issue the Existing Source Guidelines, the availability of those resources, and their source(s).**

**RESPONSE:**  Without waiving its objections, the United States responds that it does not now, and

will not in the future, argue that any alleged delay in issuing guidelines for existing oil and natural

gas sources is attributable to a lack of time or other resources.  The United States further refers the

parties to its response to Interrogatory No. 1.

     **15.**    **If and to the extent EPA intends to rely on higher or competing regulatory priorities, such as other rulemakings, to justify its delay, identify and explain all EPA activities of a higher or competing priority than preparation of Existing Source Guidelines.**

     **RESPONSE:**  Without waiving its objections, the United States responds that it does not

intend to issue guidelines for existing oil and natural gas sources before the E.O. Review is

complete, because the 2016 NSPS may be substantially revised or rescinded as a result.  The

United States further responds that it does not now, and will not in the future, argue that the E.O.

Review and other actions described in the amended Fed. R. Civ. P. 26(a) disclosures are higher or

competing priorities in the sense that they are or were competing for time and other resources that

otherwise could be devoted to developing the guidelines at issue, however.  The United States

further refers the parties to its responses to Interrogatory Nos. 1 and 14.

     **16.**    **For each higher or competing regulatory priority identified in response to Interrogatory No. 15, identify whether such priority is discretionary or non-discretionary.**

     **RESPONSE:**  Without waiving its objections, EPA responds that no such priorities were

identified in response to Interrogatory No. 15, and further refers the parties to its responses to

Interrogatories Nos. 1 and 15.

**17.     Explain the effect, if any, the expenditure of the additional resources required to develop and issue Existing Source Guidelines would have on EPA's ability to accomplish other agency priorities, if and to the extent EPA intends to rely on claimed interference with those priorities to justify its delay.**

RESPONSE:  Without waiving its objections, EPA responds that it does not intend to

claim that other agency priorities are a basis for not issuing the guidelines at issue.

**18.     Identify the actions, if any, that EPA believes must be taken by other government agencies, private parties, or the public before EPA can issue Existing Source Guidelines.**

RESPONSE:  Without waiving its objections, the United States responds that it does not

intend to issue the guidelines at issue at this time for the reasons articulated in its response to

Interrogatory No. 1.  The United States further responds that the actions other government

agencies, private parties, or the public would need to take before EPA can issue future guidelines

for existing oil and natural gas sources cannot be determined at this time, because they will depend

upon the substantive changes effected when the E.O. Review and action on the October 2018

Proposed Amendments are concluded.

**19.     Identify the resources EPA has spent or committed to spend on the March 2018 Amendments, October 2018 Proposed Amendments, and the Ongoing Review.**

RESPONSE:  The United States specifically objects to Interrogatory No. 19 on the grounds

that it constitutes six different interrogatories:  three directed to resources that EPA already

expended on each of three different rule makings, and three more directed to resources the Agency

has committed to spend in the future on those rule makings.  The United States further specifically

objects that identifying such resources would be unduly burdensome and not proportionate to the

needs of the case, because the United States does not contend that such past or future expenditures

are a basis for the Agency's delay in issuing the guidelines at issue.  Based on the foregoing

objections, the United States notes that no resources have been expended on the rule making

process for the March 2018 Amendments since the rule was finalized, but otherwise declines to

respond to Interrogatory No. 19.

**20.     Identify whether EPA has performed any analysis or assessment of regulatory costs and/or foregone benefits related to the Ongoing Review and the results of that analysis to date.**

**RESPONSE:** EPA specifically objects to Interrogatory No. 20 as unreasonably

burdensome and not proportionate to the needs of the case because the substance of incomplete

agency deliberations regarding the as-yet-unproposed E.O. Review rule making do not speak to the

*TRAC* factors with respect to the guidelines at issue in this case.  The United States further objects

on the grounds that all of the information that Plaintiffs seek is incomplete, deliberative, and

therefore would be protected from disclosure under the deliberative process privilege.  Without

waiving its objections, the United States responds that such an analysis or assessment is being

performed, but otherwise declines to respond to Interrogatory No. 20.

21.     **Identify whether EPA has performed any analysis or assessment of regulatory costs and/or benefits related to issuance of Existing Source Guidelines and the results of that analysis to date.**

**RESPONSE:**  Without waiving its objections, the United States responds that no such

analysis or assessment has been performed to date.

**22.     Explain how EPA's March 2018 Amendments, October 2018 Proposed Amendments, and Ongoing Review impact or relate to its ability to develop and issue Existing Source Guidelines or affect the substance of those Guidelines, including an explanation of any analysis EPA has performed concerning that impact or affect [sic].**

**RESPONSE:** The United States specifically objects to Interrogatory No. 22 on the

grounds that it constitutes at least three (and arguably seven) interrogatories: at least one (and

arguably three) directed to how three different Agency actions impact or relate to EPA's ability to

develop and issue the guidelines at issue; at least one (and arguably three) directed to the impact of

each of those three actions on the substance of the guidelines at issue; and one directed to any

analysis of those effects.  Without waiving its objections, the United States refers the parties to its response to Interrogatory No. 1, and further responds that no formal analysis of those impacts or effects has been performed.

**23.  Identify all Persons who have participated in the October 2018 Proposed Amendments.**

**RESPONSE:**  The United States specifically objects to Interrogatory No. 23 as overbroad and unduly burdensome to the extent it seeks information regarding "all persons" who have participated in the rule making process without regard to the nature of their participation, the knowledge they possess, or its relevance to the issues in this case.  Moreover, the substance of and bases for that proposed rulemaking, and the designated EPA contact person, are detailed in the notice of proposed rulemaking that was published in the Federal Register and the publicly accessible docket.  Without waiving its objections, the United States refers the parties to its amended Fed. R. Civ. P. 26(a) disclosures but otherwise declines to respond to Interrogatory No. 23.

**24.  Identify all Persons who have participated in the Ongoing Review.**

**RESPONSE:**  The United States specifically objects to Interrogatory No. 24 as overbroad and unduly burdensome to the extent that it seeks information regarding "all persons" who have participated in the E.O. Review without regard to the nature of their participation, the knowledge they possess, or its relevance to the issues in this case.  The United States further objects on the grounds that any substantive information such persons may possess regarding this incomplete and as-yet-unproposed rule making likely would be deliberative, and therefore protected from disclosure under the deliberative process privilege.  Without waiving its objections, the United States refers the parties to its amended Fed. R. Civ. P. 26(a) disclosures but otherwise declines to respond to Interrogatory No. 24.

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| ENVIRONMENTAL DEFENSE FUND, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES ENVIRONMENTAL | ) |
| PROTECTION AGENCY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

No. 18-cv-0773

Hon. Reggie Walton

## SIGNATURES FOR DEFENDANTS' RESPONSES TO
## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Dated:  February 28, 2019

As to answers to all Interrogatories

_____

Panagiotis E. Tsirigotis, Director
Office of Air Quality Planning and Standards
United States Environmental Protection Agency
109 T.W. Alexander Drive
Research Triangle Park, NC 27709

Dated:  February 28, 2019

As to objections:

_____

HEATHER E. GANGE
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C.  20044
(202) 514-0375 (telephone)

1

## <u>CERTIFICATE OF SERVICE</u>

I,  Heather Gange, certify that on this 28th day of February 2019, I transmitted a copy of the

foregoing via electronic mail and via U.S. Mail, postage prepaid, to the following counsel of

record:

| | |
|---|---|
| State of New York<br>Plaintiff | Michael Myers<br>NEW YORK STATE ATTORNEY<br>GENERAL<br>Environmental Protection Bureau<br>The Capitol<br>Albany , NY  12224<br>(518) 776-2382<br>Email:Michael.Myers@ag.Ny.Gov |
| | Morgan Anna Costello<br>NEW YORK STATE OFFICE OF THE<br>ATTORNEY GENERAL<br>The Capitol<br>Albany , NY  12224<br>(518) 776-2392<br>Email:Morgan.Costello@ag.Ny.Gov |
| | Christopher Charles Gore<br>NEW YORK STATE OFFICE OF THE<br>ATTORNEY GENERAL<br>Environmental Protection Bureau 350 Main<br>Street Main Place Tower, Suite 300a<br>Buffalo , NY  14202<br>(716) 852-6295<br>Email:Christopher.Gore@ag.Ny.Gov |
| State of California<br>Plaintiff | Daniel Martin Lucas<br>OFFICE OF THE ATTORNEY<br>GENERAL/CA<br>300 South Spring Street<br>#1702<br>Los Angeles , CA  90013<br>(213) 269-6345<br>Email:Daniel.Lucas@doj.Ca.Gov |
| | Morgan Anna Costello |

18

Kavita Paul Lesser
CALIFORNIA DEPARMTENT OF JUSTICE
Office Of The Attorney General- Environment
Section 300 South Spring Street Suite 1702
Los Angeles , CA  90013
(213) 269-6605
Email:Kavita.Lesser@doj.Ca.Gov

Timothy Eugene Sullivan
CALIFORNIA DEPARTMENT OF JUSTICE
Office Of The Attorney General P.O. Box
70550 1515 Clay St. 20th Floor
Oakland , CA  94612
(510) 879-0987
Email:Timothy.Sullivan@doj.Ca.Gov

State of Connecticut          Jill N. Lacedonia
Plaintiff                     OFFICE OF ATTORNEY GENERAL/CT
                              P.O. Box 120 55 Elm Street
                              Hartford , CT  06141
                              (860) 808-5250
                              Email:Jill.Lacedonia@ct.Gov

                              Morgan Anna Costell

State of Illinois             Gerald Thomas Karr
Plaintiff                     OFFICE OF ATTORNEY GENERAL/IL
                              69 West Washington Street
                              #1800
                              Chicago , IL  60602
                              (312) 814-3369
                              Email:Gkarr@atg.State.Il.Us

                              Morgan Anna Costello

State of Iowa                 Morgan Anna Costello
Plaintiff
                              Jacob John Larson
                              IOWA ATTORNEY GENERAL'S OFFICE
                              Hoover Building 1305 East Walnut Street 2nd
                              Floor
                              Des Moines , IA  50319
                              (515) 281-5341

19

Email:Jacob.Larson@ag.Iowa.Gov

State of Maine
Plaintiff

Gerald Donohue Reid
STATE OF MAINE OF THE ATTORNEY
GENERAL
Natural Resources Division
6 State House Station
Augusta , ME  03222-0006
(207) 626-8545
Email:Jerry.Reid@maine.Gov

Morgan Anna Costello

State of Maryland
Plaintiff

Morgan Anna Costello

Leah J. Tulin
OFFICE OF THE ATTORNEY GENERAL
200 St. Paul Place 20th Floor
Baltimore , MD  21202
410-576-6962
Email:Ltulin@oag.State.Md.Us

Commonwealth of Massachusetts
Plaintiff

Melissa A. Hoffer
ATTORNEY GENERAL,
MASSACHUSEETTS
One Ashburton Place
Boston , MA  02108
(617) 963-2322
Email:Melissa.Hoffer@state.Ma.Us

Morgan Anna Costello

Turner H. Smith
MASSACHUSETTS OFFICE OF THE
ATTORNEY GENERAL
Environmental Protection Division
One Ashburton Place
Boston , MA  02108
(617) 963-2782
Email:Turner.Smith@state.Ma.Us

Peter Charles Mulcahy
MASSACHUSETTES ATTORNEY
GENERAL GENERAL'S OFFICE
10 Mechanic Street Suite 301
Worchester , MA  01608
(774) 214-4455
Email:Peter.Mulcahy@state.Ma.Us

State of New Mexico
Plaintiff

Morgan Anna Costello

William Gregory Grantham
STATE OF MEXICO OFFICE OF THE
ATTORNEY GENERAL
Consumer And Environmental Protection
201 3rd St, Nw
Suite 300
Albuquerque , NM  87102
(505) 717-3520
Email:Wgrantham@nmag.Gov

State of Oregon
Plaintiff

Morgan Anna Costello

Paul Andrew Garrahan
OREGON DEPARTMENT OF JUSTICE
Natural Resources Section, General Counsel
Division 1162 Court Street, Ne Suite 400
Salem , OR  97301
(971) 673-1943
Email:Paul.Garrahan@doj.State.Or.Us

Commonwealth of Pennsylvania
Plaintiff

Michael John Fischer
Pennsylvania Office of Attorney General
Civil Law Division 1600 Arch St. Suite 300
Philadelphia , PA  19103
(215) 560-2171
Email:Mfischer@attorneygeneral.Gov

Morgan Anna Costello

State of Rhode Island
Plaintiff

Morgan Anna Costello

State of Vermont
Plaintiff

Morgan Anna Costello

Nicholas F. Persampieri
OFFICE OF THE ATTORNEY
GENERAL/VT
Environmental Protection Division 109 State
Street
Montpelier , VT  05609
(802) 828-3186
Email:Nick.Persampieri@vermont.Gov

State of Washington
Plaintiff

Katharine Goold Shirey
OFFICE OF ATTORNEY GENERAL/WA
Ecology Division
Po Box 40117
Olympia , WA  98504-0117
(360) 586-6769
Email:Kay.Shirey@atg.Wa.Gov

Morgan Anna Costello

District of Columbia
Plaintiff

Morgan Anna Costello

Jimmy R. Rock
OFFICE OF THE ATTORNEY GENERAL
FOR THE DISTRICT OF COLUMBIA
441 Fourth Street, Nw Suite 600-S
Washington , DC  20001
(202) 741-0770
Email:Jimmy.Rock@dc.Gov

City of Chicago
Plaintiff

Morgan Anna Costello

Jared Policicchio
City of Chicago Department of Law
30 North Lasalle Street Suite 1400
Chicago , IL  60647
312-744-1438

Environmental Defense Fund
Intervenor Plaintiff

Sean Hoe Donahue
DONAHUE & GOLDBERG, LLP
1111 14 Street, Nw Suite 510a
Washington , DC  20005
(202) 277-7085
Email:Sean@donahuegoldberg.Com

Susannah Landes Foster Weaver
DONAHUE, GOLDBERG & WEAVER, LLP
1111 14th St. Nw Suite 510a
Washington , DC  20005
(202) 569-3818
Email:Susannah@donahuegoldberg.Com


_____ /s/ Heather E. Gange _____
Heather E. Gange, Esq.
D.C. Bar No. 452615
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel. 202.514.4206