**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| State of New York, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Environmental Protection Agency, *et al.*, <br><br> Defendants. | Civil Action No. 1:18-cv-0773 <br><br> Hon. Reggie B. Walton |

**DEFENDANTS' MOTION TO STAY
PENDING CONCLUSION OF RULEMAKING**

Defendants United States Environmental Protection Agency and Andrew R. Wheeler,[1] Administrator of the United States Environmental Protection Agency (collectively "EPA"), hereby move to stay this action pending finalization of EPA's recently proposed rule, "Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources Review" ("Proposed Rule"). 84 Fed. Reg. 50,244 (Sept. 24, 2019). All of the claims in this case are based upon allegations that EPA has unreasonably delayed the issuance of guidelines under 40 U.S.C. § 7411(d) and 40 C.F.R. Part 60, Subpart B, for State plans that would regulate methane emissions from existing sources in the oil and natural gas sector ("Methane Guidelines"). EPA's authority to issue such guidelines, however, is predicated on methane standards for new sources in the oil and natural gas sector which EPA promulgated in 2016 ("2016 NSPS"). In the Proposed Rule, EPA proposes to rescind the methane standards in the 2016 NSPS. If EPA finalizes the Proposed Rule as proposed, EPA would no longer have the obligation—indeed,

---

[1] Under Federal Rule of Civil Procedure 25(d), Andrew R. Wheeler automatically was substituted for Scott Pruitt as Administrator of the U.S. Environmental Protection Agency.

would not even have the authority—to issue the Methane Guidelines, which would make this case moot.  *See* Dkt No. 48-2, at 6, ¶ 1.

EPA expects to take final action with respect to the Proposed Rule by June 2020, prior to the close of summary judgment briefing under the current case schedule.  Because the case may well be mooted before it could be decided on the merits, Plaintiffs would not be prejudiced by a stay of this case in the meantime.  In stark contrast, it is inequitable to require EPA and DOJ to continue expending substantial amounts of time, resources, and taxpayer dollars in burdensome discovery and motions practice.  EPA therefore respectfully requests that the Court stay this case pending EPA's completion of the rule making process, during which time the Agency can submit status reports at 60-day intervals.[2]

**I.      BACKGROUND**

    **A.      Legal Background**

Under Section 111(b) of the Clean Air Act ("CAA"), EPA lists categories of stationary sources of "air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A).  EPA then promulgates standards of performance for *new* sources within each listed category ("New Source Performance Standards" or "NSPS"), which "reflect[] the degree of emission limitation achievable through the application of the best system of emission reduction which . . . has been adequately demonstrated." *Id*. §§ 7411(a)(1), (b)(1)(B).

EPA does not promulgate performance standards for *existing* sources within listed categories.  Instead, CAA section 111(d) requires States to submit plans, pursuant to a procedure

---

[2]  Counsel for the parties conferred by telephone regarding this motion on September 25, 2019, and Plaintiffs oppose it.

prescribed by EPA's regulations, that establish, implement, and enforce standards of performance for existing sources "for any air pollutant . . . to which a [federal NSPS] would apply if such existing source were a new source…." 42 U.S.C. § 7411(d)(1).

Under the procedure prescribed by the implementing regulations for CAA section 111(d),[3] the first step in the state planning process is for EPA to publish a draft emission guideline "concurrently upon or after proposal of [federal NSPS] for the control of a designated pollutant from affected facilities." 40 C.F.R. § 60.22a(a). A "designated pollutant" is "any air pollutant, the emissions of which are subject to a standard of performance for new stationary sources," and which meets certain other criteria specified by the Act. *Id.* § 60.21a(a).

B.  **Factual Background**

1.  **New Source Performance Standards and Emission Guidelines**

In June 2016, for the first time, EPA promulgated NSPS for methane emissions from various types of new sources in the oil and natural gas sector ("2016 NSPS"). 81 Fed. Reg. 35,824 (June 3, 2016). At that time, EPA did not propose a draft emission guideline for state plans that would regulate methane emissions (*i.e.*, the "designated pollutant') from existing sources ("Methane Guidelines"). *See* 42 U.S.C. § 7411(d)(1); 40 C.F.R. § 60.22a(a). Instead, EPA issued an information collection request ("ICR") in November 2016 seeking information to, among other things, develop the Methane Guidelines, and later withdrew the ICR in March 2017. 82 Fed. Reg. 12,817 (March 7, 2017).

---

[3] On November 17, 1975, as required by CAA section 111(d) of the CAA, EPA published regulations that established a procedure for States to follow to develop plans for regulating certain emissions from existing sources. 40 Fed. Reg. 53,340 (Nov. 17, 1975) (codified at 40 C.F.R. pt. 60, subpt. B). Over the years, EPA has revised its CAA section 111(d) implementing regulations several times, most recently on July 8, 2019. 84 Fed. Reg. 32,520 (codified at 40 C.F.R. pt. 60, subpt. Ba). The recently amended regulations at Subpart Ba, rather than Subpart B, now govern the guidelines at issue in this case. 40 C.F.R. § 60.20a(a).

3

On March 28, 2017, the President issued Executive Order No. 13783 ("E.O. 13783"). "Promoting Energy Independence and Economic Growth," 82 Fed. Reg. 16,093 (March 31, 2017). Among other things, E.O. 13783 ordered EPA to "review the [2016 NSPS] and any rules and guidance issued pursuant to it, . . . and, if appropriate, [] as soon as practicable, suspend, revise or rescind the guidance, or publish for notice and comment proposed rules suspending, revising, or rescinding [the 2016 NSPS]." *Id.* at 16,096, Sec. 7(a).

EPA initiated its review of the 2016 NSPS shortly thereafter ("E.O. Review"). 82 Fed. Reg. 16,331 (April 4, 2017). If EPA were to revise the methane standards in the 2016 NSPS, such revisions could change the number and types of existing sources for which Methane Guidelines are required under 40 C.F.R. Part 60, Subpart Ba, thereby changing the scope and substantive content of the Guidelines. *See* 40 C.F.R. §§ 60.21a(b), (e), 60.22a. If EPA were to rescind the methane standards in the 2016 NSPS, EPA would no longer have the authority to prepare Methane Guidelines. *See* 42 U.S.C. § 7411(d)(1); 40 C.F.R. §§ 60.21a(b), (e), 60.22a. EPA therefore has not taken any action specifically towards developing or issuing Methane Guidelines since initiating the E.O. Review, and will not do so before the E.O. Review concludes. Declaration of Peter Tsirigotis ("Tsirigotis Decl."), attached hereto as Exhibit A, ¶ 11; ECF No. 48-2, at 5-7, 11, ¶¶ 1-3, ¶ 12; Dkt No. 48-3, at 5, ¶ 1.

As a result of the E.O. Review, EPA published the Proposed Rule on September 24, 2019, proposing two alternative sets of regulatory revisions to the 2016 NSPS. 84 Fed. Reg. 50,244. Both alternatives would (among other things) rescind the methane standards for all new sources in the oil and natural gas sector. *See* 84 Fed. Reg. at 50,244, 50,246.

EPA expects to take final action regarding the Proposed Rule by June 2020. Tsirigotis Decl. ¶ 14.

### 2. Litigation Background

Plaintiffs filed their respective complaints on April 5 and May 30, 2018, asserting claims that EPA has unreasonably delayed issuing the Methane Guidelines. Dkt Nos. 1, 20. EPA answered on July 31, 2018, Dkt No. 29, and the parties provided a Joint Report to the Court on September 18, 2018. Dkt. No. 36. In the Joint Report, EPA proposed to move for summary judgment within 30 days after the initial conference on primarily legal grounds and a sworn declaration from EPA, followed by discovery limited to those material factual issues actually disputed by the parties (if any). Dkt No. 36, at 6, 8-9, 12-13. In contrast, Plaintiffs proposed to conduct discovery before summary judgment briefing. *Id.* at 6. The Court ordered the parties to issue disclosures under Federal Rule of Civil Procedure 26(a), ordered Plaintiffs to propound discovery by October 31, 2018, and scheduled a subsequent conference to establish a summary judgement schedule. Dkt No. 37.

EPA provided initial and amended disclosures under Federal Rule of Civil Procedure 26(a) that included the relevant portion of E.O. 17383 and the Agency's "ongoing efforts to prepare a proposed rule for publication that would propose to substantially revise or rescind the methane standards in the June 2016 NSPS as contemplated by Executive Order No. 13783 . . . 82 Fed. Reg. 16093, 16096 (March 31, 2017)." *See* Dkt. No. 48-4, at 3, 5. EPA further disclosed the corresponding entry in the White House's publicly accessible Unified Agenda and Regulatory Plan: "Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources Review RIN: 2060-AT90, published at Office of Management and Budget, Current Unified Agenda and Regulatory Plan, published at https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201810&RIN=2060-AT90." *Id.* at 5.

On November 27, 2018, Plaintiffs propounded 24 interrogatories, 10 document requests, 29 requests for admission, 5 notices for fact depositions, and a notice for a deposition of EPA under Federal Rule of Civil Procedure 30(b)(6).  *See generally* Dkt Nos. 48-1 – 48-3; *see* Dkt 44, ¶ 4.  The majority of this discovery is directed to information and documents that do not speak to the basis for EPA's decision not to issue Methane Guidelines at this time, and do not speak to a potential remedy if the Court were to find for Plaintiffs with respect to liability.  Dkt. No. 49, at 2.  EPA nonetheless provided written responses on February 28, 2019, and amended responses to some interrogatories on April 26, 2019, pursuant to an agreement with Plaintiff.  *See generally* Dkt. Nos. 48-1 through 48-3.

In response to Plaintiffs' Requests for Production, and pursuant to the search terms agreed to with Plaintiffs and the Court's Order of May 14, 2019, EPA also collected and is reviewing a large volume of documents, the majority of which are deliberative or otherwise privileged.[4]  *See* Dkt No. 49, at 2; *see also* Dkt. No. 36, at 12-13; Dkt No. 48-3, at 4-7, ¶¶ 1, 4-5.  These documents therefore require careful and time-consuming review and privilege logging, and the thousands of deliberative documents identified to date (as well as others not yet identified) require additional levels of EPA review and evaluation to identify those for which EPA will assert the privilege and prepare the supporting declaration.  *See* Dkt No. 49, at 2.  EPA and the Department of Justice ("DOJ") continue to work diligently to meet the November 8, 2019, deadline for document production.  *See* Dkt No. 50, at 2.

---

[4] As EPA explained in its Federal Rule of Civil Procedure 26(a) disclosures, the final non-privileged versions of many of these documents were proposed and final EPA rulemakings, and in response to FOIA requests submitted by Plaintiff Environmental Defense Fund.  Dkt No. 48-4, at 4-5 & n.2; Dkt No. 48-3, at 4-7, 9, ¶¶ 1-2, 5-6, 9.

Under the current scheduling order, fact discovery closes on January 8, 2020. Dkt No. 50, at 2. Summary judgment briefing will commence on February 24, 2020, and will close on either June 23, 2020 or July 23, 2020, depending upon whether Plaintiffs cross-move for summary judgment. *Id.* By June 2020, EPA also expects to have taken final action with regard to the Proposed Rule. Tsirigotis Decl. ¶ 18.

## ARGUMENT

It is black letter law that a district court has the discretionary power to stay proceedings in its own court. *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Moreover, the D.C. Circuit has held that a federal agency "should move the court to hold the case in abeyance" where it is reconsidering a prior rulemaking that is the subject of claims before the Court, a scenario similar to this case in which EPA has proposed a rulemaking to revise a previous rulemaking that is the predicate for the instant unreasonable delay lawsuit. *See Anchor Line Ltd. v. Federal Maritime Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962). Evaluating a stay request entails the "exercise of judgment, which must weigh competing interests and maintain an even balance," and the proponent "must make out a clear case of hardship or inequity in order to prevail." *Landis*, 299 U.S. at 254-55 (citations omitted). The unique facts and circumstances of this case weigh heavily in favor of a stay, both because the case may well be moot before summary judgment briefing even closes, and because EPA will suffer inequity and hardship in the meantime absent a stay. *Id.*

**I.     A Stay is Warranted Because Plaintiffs' Claims May Well Be Mooted before They Are Decided on the Merits.**

By June 2020, EPA expects to take final action with respect to the Proposed Rule, which may well moot Plaintiffs' unreasonable delay claims by rescinding the methane standards in the

7

2016 NSPS. *See supra* at 4; Tsirigotis Decl. ¶¶ 12-14. More specifically, Plaintiffs have asserted only unreasonable delay claims pursuant to CAA section 304(a), which grants the district courts "jurisdiction to compel. . . agency action unreasonably delayed." 42 U.S.C. § 7604(a).[5] As the Supreme Court has explained, "a delay cannot be unreasonable with respect to action that is not required." *Norton v. So. Utah Wilderness Alliance,* 542 U.S. 55, 63 n.1 (2004). If EPA finalizes either of the alternatives in the Proposed Rule, EPA would have no authority to issue Methane Guidelines, much less any obligation to do so.

Under CAA section 111(d), a State is only authorized to establish standards of performance for existing sources "for any pollutant . . . to which a [federal NSPS] would apply if such existing source were a new source." 42 U.S.C. § 7411(d)(1). As such, the CAA's implementing regulations only require EPA to publish guidelines for a "designated pollutant," *see* 40 C.F.R. 60.22a(a), which is "any air pollutant, the emissions of which are subject to a standard of performance for new stationary sources," and which meet certain other statutory criteria not relevant here. *Id.* § 60.21a(a). If the methane standards in the 2016 NSPS are rescinded, methane will no longer be a "designated pollutant" for the oil and natural gas sector. Therefore, EPA will have no authority to issue the Methane Guidelines at issue, and Plaintiffs' CAA section 304(a) claims that EPA has unreasonably delayed in to issuing the Methane Guidelines will be moot.[6] *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in

---

[5] The unreasonable delay provision is found in the text below the enumerated list in CAA Section 304(a), 42 U.S.C. § 7604(a).

[6] For the same reason, Plaintiffs also could no longer state a claim for which relief could be granted under CAA section 304(a), 42 U.S.C. § 7604(a).

issue in the case before it.'") (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *Daimler Trucks North America LLC v. EPA*, 745 F.3d 1212, 1216 (D.C. Cir. 2016) (quoting *Church of Scientology*, 506 U.S. at 12, *Mills v. Green*, 159 U.S. at 653, and *LaRoque v. Holder*, 679 F.3d 905, 907 (D.C. Cir. 2012)).

Because EPA expects to take final action with regard to the Proposed Rule before summary judgment briefing closes, this case is no longer likely to be resolved on the merits. Hence, any further proceedings also are likely to be futile, and a stay pending EPA's conclusion of the rule making process is strongly warranted. *See*, *e.g.*, *Oceana, Inc. v. Bryson*, No. 08-1881, 2012 WL 13060013, at *1-2 (D.D.C. Mar. 22, 2018) (granting stay pending revision to the biological opinion at issue that could resolve all or part of the dispute); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093-96 (E.D. Cal. 2008) (granting stay pending conclusion of a proposed rulemaking).

**II.    EPA Will Suffer Inequity and Hardship Absent a Stay.**

A stay also is warranted under *Landis* because it is inequitable to force EPA to continue spending significant amounts of time, resources, and hundreds of thousands of taxpayer dollars on document discovery, depositions, and summary judgment proceedings for a case that may well be mooted before summary judgment briefing even closes. That is particularly true with respect to remaining fact discovery, given that EPA has expressly committed not to defend this unreasonable delay suit on the customary grounds of competing priorities, other agency actions, or lack of time or other resources as established in *Telecommunications Research & Action Ctr.*

*v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984).[7] Indeed, EPA has clearly stated that the *E.O. Review* is the reason why the Agency has not issued the Methane Guidelines to date (*i.e.,* is the source of the alleged "delay" at issue in this case).[8] If the case were decided on the merits, EPA's alleged liability would turn on whether it was reasonable for EPA to postpone the development of Methane Guidelines while it was conducting the E.O. Review that was likely to eliminate its obligation to issue the Methane Guidelines altogether. Consequently, the bulk of Plaintiffs' discovery—which instead seeks seek information regarding the *TRAC* factors that

---

[7] In its interrogatory responses, EPA repeatedly stated that:
> . . . [T]he United States responds that it does not now, and will not in the future, argue that any alleged delay in issuing guidelines for existing oil and natural gas sources is attributable to a lack of time or other resources.
>
> . . .
>
> The United States further responds that it does not now, and will not in the future, argue that the E.O. Review and other actions described in the amended Fed. R. Civ. P. 26(a) disclosures are higher or competing priorities in the sense that they are or were competing for time and other resources that otherwise could be devoted to developing the guidelines at issue [].
>
> . . .
>
> EPA responds that it does not intend to claim that other agency priorities are a basis for not issuing the guidelines at issue.

Dkt No. 48-2, at 14-15, ¶¶ 14, 15, 17; *see* Dkt No. 48-3, at 5, ¶¶ 1, 2.

[8] Instead, *the United States does not intend to issue guidelines for existing oil and natural gas sources before the E.O. Review is complete*, because the 2016 NSPS may be substantially revised or rescinded as a result.

Dkt No. 48-3, at 5, ¶ 1 (emphasis added).
> *EPA has not taken any action specifically towards developing or issuing guidelines* for existing oil and natural gas sources *since the Agency initiated the E.O. Review*. Because the E.O. Review could result in the suspension, revision, or rescission of the methane standards in the 2016 NSPS, thereby potentially affecting the substance of potential future guidelines for existing oil and natural gas sources, and/or eliminating or curtailing EPA's authority to issue such guidelines, *EPA at this time does not intend to issue such guidelines or to take actions specifically toward developing and issuing such guidelines before completing the E.O. Review*.

Dkt. No. 48-2, at 5-6, ¶ 1 (emphasis added); *see also id.* at 6-7, 11, ¶¶ 2-3, ¶ 12; Tsirigotis Decl. ¶ 12.

EPA disclaimed and the merits of agency actions not at issue in this suit—will serve no useful purpose for either the parties or the Court.

At the same time, the ongoing document discovery is imposing significant hardship on EPA.  Plaintiffs propounded and insist on pursuing numerous discovery requests of such broad scope that a year later, and despite various agreements regarding the scope of review and production that the parties have negotiated in good faith (as well as the Court's order of May 14, 2019 (Dkt. No. 50)), EPA is still expending large sums of taxpayer money and considerable staff resources to review the resulting collection and grapple with thousands of deliberative documents by the November 8, 2019, production deadline.  *See supra* at 6; Dkt No. 49, at 2.

EPA also will suffer hardship trying to prepare for and defend the fact depositions of five EPA employees, prepare a Fed. R. Civ. P. 30(b)(6) deponent, and defend a Rule 30(b)(6) deposition between the November 8 deadline for producing documents and the close of fact discovery on January 8, 2020.  *See* Dkt No. 50, at 2.  In addition to the substantial time and resources normally required for such discovery, Thanksgiving, the winter holidays, and New Years all fall within this abbreviated time frame, adding a huge logistical burden.  These depositions also will not yield information pertinent to the narrow issues before the Court— except perhaps some information duplicative of what EPA would provide in its summary judgment declaration supporting its proposed remedy.

In stark contrast, Plaintiffs cannot credibly argue that they would be prejudiced by a stay. Despite EPA's offer to move first for summary judgment based on supporting declarations within 30 days of the initial conference, significant narrowing of the issues in the case, and consistent warnings that the E.O. Review likely would result in a rule mooting or severely limiting the scope of the case, Plaintiffs insisted upon voluminous discovery prior to summary

judgment proceedings. Plaintiffs therefore put themselves in a position where the case will likely be moot before the Court could decide it on the merits, regardless of whether the case is stayed.

For all of the foregoing reasons, under the unique facts and circumstances of this case, Plaintiffs will not be prejudiced by a stay pending final action with regard to the Proposed Rule while EPA has established that it would suffer hardship and inequity. EPA therefore respectfully requests that the Court exercise its inherent authority to stay the case pending EPA's finalization of the rule making process with respect to the Proposed Rule, during which time EPA is amenable to submitting status reports at 60-day intervals.

Respectfully Submitted,

United States Department of Justice
Environment & Natural Resources Division

Dated: September 27, 2019

　/s/ Heather E. Gange
HEATHER E. GANGE, Sr. Attorney
D.C. Bar 452615
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel. 202.514.4206
Fax. 202.514.8865
Heather.Gange@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on this 27th day of September, 2019, I caused a copy of the foregoing document to be served by the Court's CM/ECF system on all counsel of record in this matter.

                                        /s/ Heather E. Gange
                                        Heather E. Gange