## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF NEW YORK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ENVIRONMENTAL DEFENSE FUND, ) | |
| ) | Civil Action No. 18-cv-0773 (RBW) |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW WHEELER, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING CONCLUSION OF RULEMAKING

LETITIA JAMES
*Attorney General of New York*
MORGAN A. COSTELLO
MICHAEL J. MYERS
CHRISTOPHER C. GORE
*Assistant Attorneys General*
Environmental Protection Bureau
Office of the Attorney General
The Capitol
Albany, NY 12224
(518) 776-2392

*Attorneys for Plaintiff*
*State of New York*

SUSANNAH L. WEAVER
SEAN H. DONAHUE
Donahue, Goldberg & Weaver, LLP
1008 Pennsylvania Ave. SE
Washington, DC 20003
(202) 569-3818

PETER ZALZAL
ROSALIE WINN
RACHEL FULLMER
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO 80302

*Attorneys for Plaintiff-Intervenor*
*Environmental Defense Fund*

*Counsel for Additional Plaintiffs Listed on Signature Pages*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

SUMMARY OF ARGUMENT ...........................................................................................1

STATUTORY AND REGULATORY FRAMEWORK ......................................................3

FACTUAL BACKGROUND ..............................................................................................3

     A.    Methane Pollution from the Oil and Natural Gas Sector..............................................3

     B.    EPA's Failure to Timely Issue Emissions Guidelines for Methane Pollution from Existing Oil and Natural Gas Operations..............................................5

     C.    EPA's Proposed Rule.....................................................................................................7

LITIGATION BACKGROUND ..........................................................................................8

ARGUMENT .....................................................................................................................10

     A.    A Stay Will Work Severe Damage to Plaintiffs. .......................................................10

     B.    EPA's Stay Motion Is Based Purely on Speculation and Fails to Demonstrate a "Compelling Reason" or "Pressing Need" for an Indefinite Stay. ..................................................................................................................12

     C.    EPA Also Has Not Demonstrated a Clear Case of Hardship or Inequity.................15

CONCLUSION..................................................................................................................18

CERTIFICATE OF SERVICE .........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alternatives Research & Dev. Found. v. Glickman*,
    101 F. Supp. 2d 7 (D.D.C. 2000) ...................................................................12, 15

*Am. Civil Liberties Union v. FCC*,
    823 F.2d 1554 (D.C. Cir. 1987) ............................................................................13

*Am. Ctr. for Civil Justice v. Ambush*,
    794 F. Supp. 2d 123 (D.D.C. 2011) ......................................................................16

*Am. Hosp. Ass'n v. Dep't of Health and Human Servs.*,
    Civ. No. 18-2112 (JDB), 2018 WL 5777397 (D.D.C. Nov. 2, 2018)................12, 15

*Anchor Line Limited v. Federal Maritime Comm'n*,
    299 F.2d 124 (D.C. Cir. 1962) ..............................................................................14

*Ass'n of Nat'l Advertisers v. FTC*,
    627 F.2d 1151 (D.C. Cir. 1979) ............................................................................13

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
    634 F. Supp. 2d 1081 (E.D. Cal. 2008).................................................................15

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
    668 F.3d 724 (D.C. Cir. 2012) ..............................................................................10

*California v. EPA*,
    360 F. Supp. 3d 984 (N.D. Cal. 2018) ..................................................................15

*Clean Air Council v. Pruitt*,
    862 F.3d 1 (D.C. Cir. 2017)....................................................................................7

*Davis v. D.C. Child & Family Servs. Agency*,
    Civ. No. 10-1564 (RCL), 2011 WL 13266318 (D.D.C. Dec. 6, 2011) ................17

*DRC, Inc. v. Republic of Honduras*,
    999 F. Supp. 2d 1 (D.D.C. 2012) ...................................................................12 n.5

*Garcia v. Acosta*,
    393 F. Supp. 3d 93 (D.D.C. 2019)...................................................2, 10, 12, 15

*HT S.R.L. v. Velasco*,
    Misc. No. 15-664 (RBW), 2015 WL 13759884 (D.D.C. Nov. 13, 2015) ......... 9-10, 12, 15, 18

*Jefferson v. Collins*,
    Civ. No. 12-239 (RBW), 2015 WL 13659260 (D.D.C. Oct. 7, 2015)...................................16

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).....................................................................................1-2, 9-11, 17-18

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ...................................................................................16

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)....................................................................................................10

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).......................................................................................................17

*Nat'l Indus. For Blind v. Dep't of Veterans Affairs*,
    296 F. Supp. 3d 131 (D.D.C. 2017) ....................................................................... 16-17

*Oceana Inc. v. Bryson*,
    Civ. No. 08-1881 (PLF), 2012 WL 13060013 (D.D.C. Mar. 22, 2012) ................................14

*Riverkeeper, Inc. v. Pruitt*,
    Civ. No. 17-4916 (VSB), 2018 WL 987262 (S.D.N.Y. Feb. 20, 2018) ..............................15

*Wis. Gas Go. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985)...................................................................................16

**FEDERAL STATUTES**

42 U.S.C.
    § 7411(b)(1) ...............................................................................................................3
    § 7411(b)(1)(B)......................................................................................................5 n.1
    § 7604(a) ....................................................................................................................8

**FEDERAL REGULATIONS**

40 C.F.R.
    § 60.22a(a) .................................................................................................................3

74 Fed. Reg. 66,496 (Dec. 15, 2009)...................................................................................3

77 Fed. Reg. 49,490 (Aug. 16, 2012)............................................................................3, 5 n.1

81 Fed. Reg, 35,763 (June 3, 2016) ...................................................................................5

81 Fed. Reg. 35,824 (June 3, 2016) ...............................................................................4-5

82 Fed. Reg. 12,817 (Mar. 7, 2017)....................................................................................5

82 Fed. Reg. 16,093 (Mar. 31, 2017) .............................................................................6

82 Fed. Reg. 16,331 (Apr. 4, 2017) ...............................................................................6

82 Fed. Reg. 25,730 (June 5, 2017) ...............................................................................7

82 Fed. Reg. 27,641 (June 16, 2017) ........................................................................7, 13

82 Fed. Reg. 27,645 (June 16, 2017) ........................................................................7, 13

83 Fed. Reg. 10,478 (Mar. 9, 2018) .............................................................................13

83 Fed. Reg. 52,056 (Oct. 15, 2018) ............................................................................13

84 Fed. Reg. 50,244 (Sept. 24, 2019) ............................................................................7

MISCELLANEOUS AUTHORITIES

IPCC, Summary for Policymakers of IPCC Special Report on Global Warming of
     1.5 C Approved by Governments (Oct. 8, 2018), *available at*
     http://www.ipcc.ch ..............................................................................................11 n.3

U.S. Global Change Research Program, Fourth National Climate Assessment,
     Vol. II, Chapters 18-27 (2018), *available at* https://nca2018.globalchange.gov...............11 n.4

## INTRODUCTION

Plaintiffs the States of New York, California, Connecticut, Illinois, Iowa, Maine, Maryland, New Mexico, Oregon, Rhode Island, Vermont, Washington, the Commonwealths of Massachusetts and Pennsylvania, the District of Columbia, and the City of Chicago (State Plaintiffs), and Plaintiff-Intervenor Environmental Defense Fund (EDF) (collectively Plaintiffs), hereby jointly submit this opposition to the motion by Defendants the United States Environmental Protection Agency and Andrew D. Wheeler, in his official capacity as the Acting Administrator (collectively EPA), to stay this case pending conclusion by EPA of a separate rulemaking that EPA speculates may moot this case.

This suit challenges EPA's unreasonable delay in fulfilling its mandatory statutory duty to promulgate regulations to address methane emissions from existing sources in the oil and natural gas sector (Methane Guidelines), a duty that is in full force and effect. EPA's recent publication of a *proposal* to rescind portions of another rule does not provide a reason, much less the required compelling reason, to support its motion. Accordingly, Plaintiffs respectfully request that the Court deny EPA's motion, and allow the parties to conclude discovery and dispositive motion practice, as provided by the Court's prior orders.

## SUMMARY OF ARGUMENT

EPA's stay motion seeks to delay resolution of this case indefinitely, and thus to perpetuate the agency's unreasonable delay in issuing Methane Guidelines. Where there is a "fair possibility that the stay … will work damage to someone else," EPA must "make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). EPA has failed to make any such case in support of its stay motion; indeed, it has not even tried.

A stay of this case would severely damage Plaintiffs and their residents and members, who have already been significantly harmed by EPA's failure to promulgate Methane Guidelines. Delay in resolving this case will further delay reductions in methane emissions that significantly contribute to climate change harms already being suffered by Plaintiffs. Yet EPA's motion is not premised on the agency's efforts to comply with its mandatory duty to protect human health and welfare—a duty EPA does not dispute. Rather, it is improperly based on a recently proposed rule to rescind methane standards for new oil and natural gas sources that EPA alleges, *if* finalized, *may* moot this case. Under this Court's cases, that is insufficient. *See Garcia v. Acosta*, 393 F. Supp. 3d 93, 110–11 (D.D.C. 2019) (Where it is not "certain" that a proposed rulemaking will moot a case, mere speculation cannot be the predicate for a stay). Indeed, in the past three years EPA has regularly abandoned proposed rollbacks of its oil and gas regulations, and major oil and gas companies have expressly called for the agency to regulate methane from new and existing sources, contrary to the proposal.

Meanwhile, EPA has not and cannot meet its burden of showing a "clear case of hardship or inequity" with continuing this litigation. Merely being required to defend this suit, including completing discovery and dispositive motions practice pursuant to the parameters already established by the Court, does not constitute the "rare circumstances" in which a stay is appropriate*. Landis*, 299 U.S. at 255. Nor has EPA argued or demonstrated that a stay would relieve any particular burden on the Court.

In attempting to leverage the proposed rule into a stay of this litigation, EPA is asking the Court to indefinitely extend the exact harm that prompted Plaintiffs to sue in the first place, all without letting the administrative process run its course. This Court should reject EPA's attempt to coopt this Court's case management powers to perpetuate EPA's own unlawful actions, deny

the stay, and proceed with this case, as federal courts around the country have done when faced

with similar bids for delay. *See infra* at 15.

## STATUTORY AND REGULATORY FRAMEWORK

Under Clean Air Act section 111(b), EPA "shall" list categories of stationary sources that

the Administrator finds "cause[], or contribute[] significantly to, air pollution which may

reasonably be anticipated to endanger public health or welfare," and "shall" promulgate

"standards of performance" for emissions of air pollutants from new and modified sources within

each such category. 42 U.S.C. § 7411(b)(1).

When EPA establishes performance standards for new sources in a particular source

category, EPA is also required under section 111(d) and applicable regulations to publish

guidelines for controlling emissions from existing sources in that source category. EPA's

regulations provide that such guidelines "will" be issued "[c]oncurrently upon or after proposal

of [section 111(b)] standards of performance for the control of a designated pollutant from

affected facilities." 40 C.F.R. § 60.22a(a).

## FACTUAL BACKGROUND

### A.    Methane Pollution from the Oil and Natural Gas Sector

EPA found, almost ten years ago, that methane, along with other greenhouse gases,

endangers public health and welfare because of its contribution to climate change. EPA

Responses to Requests for Admission (Dkt No. 48-1) at ¶¶ 5 & 6; *see also* 74 Fed. Reg. 66,496

(Dec. 15, 2009); 77 Fed. Reg. 49,490, 49,535 (Aug. 16, 2012) (identifying changes including

"increased air and ocean temperatures, changes in precipitation patterns, melting and thawing of

global glaciers and ice, increasingly severe weather events, such as hurricanes of greater

intensity and sea level rise."). Indeed, EPA admits that, pound for pound, methane warms the

earth eighty-four to eighty-six times more than carbon dioxide for the first two decades after

release and twenty-eight to thirty-six times more over a one hundred-year time frame. Dkt No. 48-1 at ¶¶ 1 & 2.

EPA also admits that the oil and natural gas sector is the largest industrial emitter of methane emissions in the United States, *id.* at ¶ 7; *see also* 81 Fed. Reg. 35,824, 35,842 (June 3, 2016); and that methane emissions from existing oil and natural gas sources constitute the majority of methane emissions from the oil and natural gas sector in the United States. Dkt No. 48-1 at ¶ 8; *see also* EPA Answer (Dkt No. 29) at ¶ 35. EPA further admits that, in or before 2014, EPA identified available and technically and economically feasible mitigation technologies and practices to reduce methane emissions from oil and natural gas operations. Dkt No. 48-1 at ¶¶ 9–10, 20–25; *see also* Dkt No. 29 at ¶ 44.

Methane emissions from oil and natural gas sources harm plaintiffs and their residents and members by significantly contributing to air pollution that causes climate change. Plaintiffs have experienced and will continue to experience substantial injuries from climate change, including, but not limited to, sea level rise and increased severity of storms and flooding resulting in property damage and hazard to human safety, increased heat deaths and illnesses due to intensified and prolonged heat waves, and increased frequency and duration of wildfires threatening lives and property and increasing local air pollution. *See* Declaration of Jared Snyder (Snyder Decl.) at ¶¶ 8–19; Declaration of Dr. Rupa Basu (Basu Decl.) at ¶¶ 9–11 & Attach. 1& 2; Declaration of Jay Chamberlin (Chamberlin Decl.) at ¶¶ 5–13; Declaration of Lisa Berry Engler (Engler Decl.) at ¶¶ 7–26; Declaration of Dr. Renee McVay and Hillary Hull (McVay/Hull Decl.) at ¶¶ 15–19; Declaration of Dr. Ananya Roy and Dr. Tammy Thompson (Roy/Thompson Decl.) at ¶¶ 18–31; Declaration of Ilissa B. Ocko (Ocko Decl.) at ¶¶ 7–8.

**B.**  **EPA's Failure to Timely Issue Emissions Guidelines for Methane Pollution from Existing Oil and Natural Gas Operations**

In 2016, EPA issued new source performance standards for methane emissions from new and modified oil and gas sources under Clean Air Act section 111(b), 81 Fed. Reg. 35,824 (June 3, 2016) (New Source Rule), triggering its obligation to issue Methane Guidelines for existing sources.[1] Although the agency did not concurrently issue Methane Guidelines, it continued to move deliberately towards establishing such Guidelines. On the same day that it issued the New Source Rule, EPA published notice that it would be issuing an information collection request (ICR) to obtain "more specific information that would be of critical use in addressing [existing source emissions pursuant to] CAA section 111(d)." 81 Fed. Reg, 35,763, 35,764 (June 3, 2016). After two rounds of notice and comment, and review by the Office of Management and Budget, EPA issued the final methane ICR on November 10, 2016 and began receiving the requested information from oil and natural gas operators in January 2017.

That process, however, was abruptly reversed after a change in administrations. In March 2017, just one day after Attorneys General from several oil and natural gas producing states asked him to do so, then-EPA Administrator Pruitt abruptly withdrew the ICR. He withdrew (not suspended) it without any notice and comment, purportedly to assess the need for the information. *See* 82 Fed. Reg. 12,817 (Mar. 7, 2017).

The ongoing discovery in this case has uncovered information revealing that EPA's withdrawal of the ICR was not based upon any reasoned analysis by EPA, but accomplished through politics and industry lobbying. For example, Plaintiffs learned that the senior career staff

---

[1] This rulemaking itself was significantly delayed. In 2012, when EPA issued a final rule revising some aspects of the oil and natural gas standards for other pollutants, 77 Fed. Reg. 49,490, despite having found that methane emissions endanger human health and welfare, the agency failed to determine whether to regulate methane in violation of its mandatory (and long-overdue) obligation to do so. 42 U.S.C. § 7411(b)(1)(B). Consequently, several of the Plaintiff States notified EPA of their intent to sue the agency for violating the Clean Air Act. Compl. (Dkt No. 1) at ¶ 45. Ultimately, the agency fulfilled that duty in 2016.

"most familiar with the circumstances surrounding the ICR withdrawal," "did not discuss the ICR withdrawal at any time with Mr. Pruitt," nor "with any outside parties," and did not "bec[o]me aware of the basis for the withdrawal of the 2016 ICR [until] March 2, 2017," the day it was signed. EPA's Amended Responses to Plaintiffs' First Set of Interrogatories (Dkt No. 48-2) at 4–7.

Instead, the ICR withdrawal was spurred by a request from an oil and natural gas industry lobbyist who urged "several key rationales for either eliminating the ICR or at least extending the response date." Decl. of Morgan Costello (Costello Decl.) at Attach. 1. That request was shepherded by a politically-appointed member of the new Administration's transition team, who thanked the lobbyist "for bringing it to our attention," explaining that "[t]here was nobody here (political or career) who thought the ICR made sense given the changes in associated policy," and apologized that "with all of the commotion of the transition, the very sensible proposal to cancel the ICR fell through the cracks." *Id.* Within a matter of weeks, the ICR was canceled outright and EPA's process to regulate existing sources halted, based on an apparent change in policy that occurred without any public process or record in support. *See id.*

Several weeks *later*, on March 28, 2017, President Trump issued Executive Order No. 13783, 82 Fed. Reg. 16,093 (Mar. 31, 2017), which directed agencies to review existing regulations and "appropriately suspend, revise, or rescind those that unduly burden the development of domestic energy resources *beyond the degree necessary to protect the public interest or otherwise to comply with the law.*" *Id.*, Sec. 1(c) (emphasis added). EPA initiated its review of the New Source Rule in April 2017 (E.O. Review). 82 Fed. Reg. 16,331 (Apr. 4, 2017).

Shortly thereafter, in June 2017, again without any notice or comment, then-Administrator Pruitt attempted to unlawfully stay the effectiveness of the New Source Rule. 82 Fed. Reg. 25,730 (June 5, 2017). Less than a month later, the United States Court of Appeals for the District of Columbia Circuit summarily vacated EPA's stay of the New Source Rule as "arbitrary, capricious, [and] ... in excess of [its] ... statutory ... authority." *Clean Air Council v. Pruitt*, 862 F.3d 1, 14 (D.C. Cir. 2017). Also in June 2017, EPA proposed two additional stays of the requirements of the New Source Rule for notice and comment. 82 Fed. Reg. 27,641 (June 16, 2017) & 82 Fed. Reg. 27,645 (June 16, 2017). After receiving significant adverse comments on its proposals for additional stays, including from Plaintiffs, EPA never finalized the proposed stays. Therefore, the New Source Rule, including its triggering statutory requirement to promulgate Methane Guidelines to address methane emissions from existing sources, continues in full force and effect.

While not disputing its mandatory statutory obligation, EPA admits that it "has not taken any action specifically towards developing or issuing the Methane Guidelines, nor does EPA intend to do so before completing the E.O. Review." Decl. of Peter Tsirigotis (Tsirigotis Decl.) at ¶ 11; *see* Defs.' Mot. to Stay Pending Conclusion of Rulemaking (Mot.) (Dkt No. 59) at 4. Moreover, although EPA halted its process before it initiated the E.O. Review, EPA's sole stated rationale for refusing to promulgate Methane Guidelines is that its E.O. Review "was likely to eliminate [EPA's] obligation to issue the Methane Guidelines altogether." Mot. at 10.

## C.    EPA's Proposed Rule

On September 24, 2019, EPA published a proposed rule to rescind methane standards for all new sources in the oil and natural gas sector. 84 Fed. Reg. 50,244. EPA's stated reason for the rescission is to remove regulatory duplication because the requirements for controlling emissions of another pollutant, volatile organic compounds, from new sources are allegedly "entirely

redundant" of the methane requirements. *Id.* at 50,246. EPA asserts that "[i]t is rational for EPA to determine that requirements that are redundant to other requirements are not necessary because they do not result in emission reductions beyond what would otherwise occur," and proclaims that therefore the rescission "will have no impact on the amount of methane emissions." *Id.* at 50,259. However, the agency at the same time admits that its rescission of the methane requirements for *new* sources will remove its statutory obligation to promulgate non-redundant Methane Guidelines for controlling methane emissions from *existing* sources. *Id.* at 50,271.  EPA's intention to no longer directly regulate methane emissions from the oil and natural gas sector has been met with widespread opposition from a range of stakeholders, including many major oil companies like Exxon Mobil Corp., BP PLC, and Royal Dutch Shell PLC, who support EPA's direct regulation of methane from both new and existing sources.[2]

## LITIGATION BACKGROUND

On April 5, 2018, and May 30, 2018, Plaintiffs filed Complaints for declaratory and injunctive relief under section 304(a) of the Clean Air Act (Act), 42 U.S.C. § 7604(a), based on allegations that, *inter alia*, EPA has unreasonably delayed complying with its mandatory obligation under section 111(d) of the Act, and applicable regulations, to issue Methane Guidelines for existing sources in the oil and natural gas sector. *See* Compls. (Dkt Nos. 1, 20).

After rejecting EPA's request to bypass discovery in this case (and after EPA rejected this Court's offer to have EPA submit declarations to help determine if discovery was needed), the Court issued an initial Case Management Order on September 27, 2018, establishing initial

---

[2] *See, e.g.*, https://www.reuters.com/article/us-ceraweek-energy-emissions/shell-urges-trump-white-house-to-tighten-methane-leak-rules-idUSKBN1QT2DT; https://www.houstonchronicle.com/opinion/outlook/article/BP-America-chief-It-s-time-for-the-Trump-13721656.php; https://energyfactor.exxonmobil.com/perspectives/supports-methane-regulation/; https://www.shell.com/sustainability/transparency/public-advocacy-and-political-activity/_jcr_content/par/textimage.stream/1554466210642/0a46ab13e36e99f8762ebb021bd72decec2f47b2/final-industry-association-climate-review-april-2019.pdf. This position is shared by other key stakeholders, including major downstream utilities (natural gas users) and investors. *See, e.g.*, http://business.edf.org/blog/2019/10/09/federal-methane-rollbacks-spark-new-opposition-from-12-major-utilities.

disclosures and discovery deadlines. *See* Order (Dkt No. 37). EPA initially refused to respond in full to many of State Plaintiffs' interrogatories (*see* Dkt No. 48-2), and most of their document requests, thereby substantially delaying discovery and necessitating a hearing before this Court. *See* Plaintiffs' Position Regarding Defendants' Responses to Plaintiffs' Document Requests and Proposed Production and Briefing Schedules (Dkt No. 48); *see also* EPA's Responses to Plaintiffs' First Set of Requests for Production (Dkt No. 48-3). Following that hearing, on May 14, 2019 the Court entered an order requiring EPA to respond in full to the bulk of State Plaintiffs' requests. Order (Dkt No. 50) (granting EPA's requested six months—until November 8, 2019—to complete its rolling document production, establishing a discovery deadline of January 8, 2020, and adopting the parties' jointly proposed schedule for briefing of cross-motions for summary judgment to be completed no later than July 23, 2020).

Since the Court's May 14 order, EPA has transmitted to Plaintiffs a series of rolling document productions and several iterative versions of a non-final privilege log. Costello Decl. at ¶ 3. The parties have regularly conferred and, to address concerns raised by EPA, Plaintiffs have agreed in good faith to several additional limits on the scope of document discovery, including limited search terms and date ranges. *Id.* at ¶ 4. As discussed *supra* at 6, the documents produced thus far have shed critical light on the basis for EPA's decision not to fulfill its statutory obligation to issue Methane Guidelines. *See, e.g.*, Costello Decl. at Attach. 1.

## STANDARD OF REVIEW

A stay of litigation is only appropriate in "rare circumstances." *Landis*, 299 U.S. at 255. "[A] party moving for a stay needs to satisfy a high burden," *HT S.R.L. v. Velasco*, Misc. No. 15-664 (RBW), 2015 WL 13759884, at *7 (D.D.C. Nov. 13, 2015), to demonstrate that a stay is warranted. To carry its burden, EPA must "make out a clear case of hardship or inequity in being

required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255. Where a party seeks an indefinite stay, as EPA does here, it must further demonstrate a "compelling reason" or "pressing need" for the stay. *Velasco*, 2015 WL 13759884, at *7 (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012)). Where it is not "certain" that a proposed rulemaking will moot a case, mere speculation cannot be the predicate for a stay. *See Garcia*, 393 F. Supp. 3d at 110–11.

## ARGUMENT

### A.  A Stay Will Work Severe Damage to Plaintiffs.

Plaintiffs and their residents and members are harmed every day by EPA's delay in failing to act on its duty to promulgate Methane Guidelines for controlling pollution from existing oil and natural gas sources. These existing sources account for the majority of methane emissions from this sector, which accounts for over twenty five percent of domestic methane emissions. *Supra* at 4. Over the at least three-year period of EPA's unreasonable delay, existing oil and natural gas sources have emitted a massive amount of methane: over 33 million metric tons of methane, equivalent to the climate impact of over 600 million passenger vehicles driven for one year. McVay/Hull Decl. at ¶ 11, Ocko Decl. at ¶ 12. If EPA had issued Methane Guidelines for existing sources identical to the New Source Rule simultaneously with the issuance of that rule, 12.2 million tons—37 percent—of that methane pollution would have been prevented. McVay/Hull Decl. at ¶ 11. Substantial pollution will continue to occur as EPA further delays the adoption of Methane Guidelines—allowing well over 3 million metric tons of methane pollution that could otherwise be eliminated each year that the delay continues. McVay/Hull Decl. at ¶ 12.

Methane emissions harm Plaintiffs and their residents and members by significantly contributing to pollution that causes climate change. *Massachusetts v. EPA*, 549 U.S. 497, 521

(2007). A dire report released a year ago by the Intergovernmental Panel on Climate Change highlights the immediate and pressing need to curb pollutants like methane in the short term to avoid the most devastating effects of climate change.[3] The additional methane emissions that have resulted and will result from EPA's delay in promulgating Methane Guidelines increase the likelihood that Plaintiffs will continue to experience increasing harms associated with climate change. NY Decl. at ¶ 5. As detailed in the attached declarations, these harms include increased heat-related deaths, damaged or lost coastal areas due to sea level rise and coastal flooding, disrupted ecosystems, more severe weather events, and longer and more frequent droughts. Snyder Decl. at ¶¶ 8–19; Basu Decl. at ¶¶ 9–11 & Attach. 1 & 2; Chamberlin Decl. at ¶¶ 5–13; Engler Decl. at ¶¶ 7–26; Ocko Decl. at ¶¶ 7–8. These and other climate change harms to Plaintiffs were confirmed in the *Fourth National Climate Assessment*, a 2018 report issued by EPA itself and other government agencies. *See* U.S. Global Change Research Program, *Fourth National Climate Assessment*, Vol. II, Chapters 18-27 (2018).[4] Rapid reductions in methane emissions are critical to slowing the rate of warming and reducing the risk of the worst climate change harms. Ocko Decl. at ¶¶ 6–9.

Overall, the pollution reductions at stake in this matter are significant—as are the harms to Plaintiffs that will occur throughout any delay in deciding the case. At the very least, these harms greatly exceed the "fair possibility of damage" required to trigger EPA's burden to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

---

[3] IPCC, Summary for Policymakers of IPCC Special Report on Global Warming of 1.5 C Approved by Governments (Oct. 8, 2018), *available at* http://www.ipcc.ch.

[4] *Available at* https://nca2018.globalchange.gov.

**B.**     **EPA's Stay Motion Is Based Purely on Speculation and Fails to Demonstrate a "Compelling Reason" or "Pressing Need" for an Indefinite Stay.**

EPA asks this Court to "stay the case pending EPA's finalization of [a] rule making process." Mot. 12. While EPA speculates that it "expects to take final action … by June 2020," Mot. 2, EPA provides no end date for the stay, and concedes (as it must) that it may not finalize the rule as proposed, or at all, Mot. 1–2 ("*If* EPA finalizes that Proposed Rule *as proposed* ….") (emphasis added); *see* Tsirigotis Decl. at ¶ 12 ("*If* EPA finalizes either of the two [alternative] proposed amendments ….") (emphasis added).[5] Consequently, EPA must demonstrate a "compelling reason" or "pressing need" for the stay. *Velasco*, 2015 WL 13759884, at *7. EPA has not done so.

This Court has concluded that where a stay will cause plaintiffs "concrete harm in the near future," it "is not enough" for an agency to point to an uncertain proposed rulemaking and "invoke … judicial economy." *Garcia*, 393 F. Supp. 3d at 110–11; *see Am. Hosp. Ass'n v. Dep't of Health and Human Servs.*, Civ. No. 18-2112 (JDB), 2018 WL 5777397, at *2 (D.D.C. Nov. 2, 2018) ("declin[ing] to stay the case pending the outcome of the government's proposed rule," and noting that the agency "cannot guarantee that the proposed rule … will become final at all, as [it] is required to consider any comments made before it issues a final rule"); *see also Alternatives Research & Dev. Found. v. Glickman*, 101 F. Supp. 2d 7, 15–16 (D.D.C. 2000) (rejecting as "premature" a stay request premised upon "the outcome of [a] petition for rulemaking").

Indeed, as in *Garcia* and *American Hospital Association*, the proposed rule underlying EPA's motion for stay is just that—a proposal. Despite speculating that "this case is no longer

---

[5] The fact that EPA has suggested that the Court require status reports does not change the indefinite nature of the requested stay. *See DRC, Inc. v. Republic of Honduras*, 999 F. Supp. 2d 1, 7 (D.D.C. 2012) ("While the Court also required the parties to file status reports every 60 days … the stay is effectively indefinite.").

likely to be resolved on the merits," Mot. 9, unless it concedes that it has prejudged the outcome

of such rulemaking, EPA cannot credibly say with any certainty when, if, or in what form the

final rule will become effective. *See Ass'n of Nat'l Advertisers v. FTC*, 627 F.2d 1151, 1170

(D.C. Cir. 1979) (it is unlawful for an agency official to irrevocably prejudge the outcome of a

rulemaking); *see also Am. Civil Liberties Union v. FCC*, 823 F.2d 1554, 1581 (D.C. Cir. 1987)

("Notice and comment rulemaking procedures obligate the [agency] to respond to all significant

comments, for 'the opportunity to comment is meaningless unless the agency responds to

significant points raised by the public.'" (citation omitted)).

During just this Administration, EPA has walked away from (or forecast imminent dates

for proposed changes that are still under an uncertain timeframe) with respect to at least four

proposed rules regarding regulation of the oil and gas sector alone:

- *Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources: Three Month Stay of Certain Requirements*, 82 Fed. Reg. 27,641 (June 16, 2017) (proposing a rule to stay certain oil and gas requirements for three months; originally forecast to be finalized in August 2017, but more than two years later, EPA has not finalized this rule);

- *Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources: Stay of Certain Requirements*, 82 Fed. Reg. 27,645 (June 16, 2017) (proposing a rule to stay certain oil and gas requirements for two years; originally forecast to be finalized in August 2017, but more than two years later, EPA has not finalized this rule);

- *Notice of Proposed Withdrawal of the Control Techniques Guidelines for the Oil and Natural Gas Industry*, 83 Fed. Reg. 10,478 (Mar. 9, 2018) (proposing to withdraw Control Technique Guidelines for existing oil and natural gas sources in ozone Nonattainment areas; originally forecast to be finalized in August 2018, but not yet finalized, and EPA's current regulatory agenda indicates that the agency intended to issue a supplemental notice of potential withdrawal by last month);

- *Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources Reconsideration*, 83 Fed. Reg. 52,056 (Oct. 15, 2018) (proposing to revise certain oil and gas requirements; originally forecast to be finalized in April 2019, but not yet finalized).

It is not at all unusual for an agency to abandon or substantially change a proposed rule—indeed, if that were not the case, the notice and comment process would be futile.

There is good reason to believe that the proposal on which EPA bases its stay motion will meet the same fate. The proposal improbably and controversially proposes to rescind methane standards because they are allegedly redundant of other standards. Yet, at the same time, EPA asserts they are *not at all* redundant in its motion here. EPA's rollback of methane standards is opposed even by major oil and gas companies. *See supra* at 8. Further, EPA's anticipated time frame for proposing and finalizing this anticipated rulemaking itself has a history of delay. EPA originally said it would release a proposal to rescind methane regulation in July 2018 and finalize a rule by January 2019,[6] a schedule that has already slipped by more than a year. A stay in this case could well be a long road to nowhere given EPA's track record and the circumstances of EPA's proposal.

The cases EPA cites, Mot. 7, 9, do not help its cause. Unlike in *Anchor Line Limited v. Federal Maritime Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962), EPA is *not* "reconsider[ing]" its refusal to issue Methane Guidelines; it continues to reaffirm that decision, Mot. 4—a decision that continues to severely harm plaintiffs, *supra* at 10–11. For that reason and others, this case is nothing like *Oceana Inc. v. Bryson*, cited by EPA. Mot. 9. In *Oceana*, EPA requested a "brief stay" of less than three months that would terminate on a date certain. Civ. No. 08-1881 (PLF), 2012 WL 13060013, at *1–2 (D.D.C. Mar. 22, 2012) (granting a stay until June 1, 2012). Moreover, the agency there was not undertaking a wide-ranging rulemaking regarding the regulation of an entire sector, but merely reconsidering a biological opinion evaluating "the

---

[6] *See* https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201804&RIN=2060-AT90. EPA later revised its forecast to a proposal by December 2018 and final rule by June 2019, and then yet again to a May 2019 proposal and December 2019 final rule, all dates that it missed. *See* https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201810&RIN=2060-AT90; https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201904&RIN=2060-AT90.

impact of sea scallop fisheries on the loggerhead sea turtle." *Id.* at *1. *Ass'n of Irritated Residents v. Fred Schakel Dairy*, also cited by EPA, Mot. 9, similarly regarded an additional paragraph to be added to a revision of a state's plan to address ozone pollution, and the court's application of the legal standard in that case is entirely cursory and does not even mention any harm to plaintiffs. 634 F. Supp. 2d 1081, 1094, 1096 (E.D. Cal. 2008).

On the other hand, where there is a possibility of harm to plaintiffs, this and other courts have recently declined to stay a case pending agency proceedings even where those proceedings might moot the case. *See Garcia*, 393 F. Supp. 3d at 110–11; *Am. Hosp. Ass'n*, 2018 WL 5777397, at *2; *Alternatives Research & Dev. Found.*, 101 F. Supp. 2d at 15–16; *see also California v. EPA*, 360 F. Supp. 3d 984, 993–94 (N.D. Cal. 2018) (declining to stay case alleging that EPA failed to perform its mandatory duty by a date certain despite EPA's assertion that proposed rule would delay that date certain); *Riverkeeper, Inc. v. Pruitt*, Civ. No. 17-4916 (VSB), 2018 WL 987262, at *4 (S.D.N.Y. Feb. 20, 2018) (declining to grant stay pending rulemaking, and recognizing "Plaintiffs' rights as litigants to have [the Court] decide expeditiously the legal issues raised by their Complaint").

Consequently, because the stay that EPA requests is indefinite and based on speculative future events, EPA's burden is even higher, and it must state a compelling reason or pressing need for the stay, which it has failed to do. *Velasco*, 2015 WL 13759884, at *7.

## C.     EPA Also Has Not Demonstrated a Clear Case of Hardship or Inequity.

EPA has also failed to make the "clear case of hardship or inequity" required to justify a stay that will perpetuate the very delay that is harming Plaintiffs. Although it has never disputed its legal obligation to develop existing source standards, EPA brazenly asserts that for the past two and a half years it "has not taken any action specifically towards developing or issuing Methane Guidelines, nor does [it] intend to do so before completing" its E.O. Review at some

uncertain time in the future. Mot. 4; Tsirigotis Decl. at ¶ 11. EPA's invocation of the Court's

equitable authority under these circumstances is improper. *See Nat'l Indus. For Blind v. Dep't of*

*Veterans Affairs*, 296 F. Supp. 3d 131, 140-41 (D.D.C. 2017) (denying government's motion for

a stay and finding it inconsistent with equitable principles for agency to both implement the

policy allegedly causing injury and seek indefinite delay of plaintiffs' challenge to that policy).

At the same time, EPA complains that having to defend against a suit for this blatant and

unreasonable delay in carrying out its statutory obligations "is inequitable." Mot. 2. Without

providing *any* substantiation, EPA vaguely asserts that it is "spending significant amounts of

time, resources, and hundreds of thousands of taxpayer dollars on document discovery,

depositions and summary judgment proceedings…." Mot. 9–11. EPA cannot rely on

"unsubstantiated claims of hardship." *Jefferson v. Collins*, Civ. No. 12-239 (RBW), 2015 WL

13659260, at *4 (D.D.C. Oct. 7, 2015); *see Wis. Gas Go. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.

1985) (denying motions for stay premised upon "unsubstantiated and speculative allegations").

Even putting to the side EPA's vague and unsubstantiated allegations of hardship, "being

required to defend a suit, without more, does not constitute a clear case of hardship or inequity

within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)

(internal quotation marks omitted). That is particularly true here where the parties have worked

together to meet the Court's discovery deadlines, EPA has already responded to Plaintiffs'

interrogatories and requests for admissions, and the document discovery deadline is just three

weeks away. *See* Dkt No. 50, at 2 (setting deadlines). Indeed, EPA's complaint with respect to

much of the discovery, including the document discovery of which EPA chiefly complains, Mot.

6, is either moot or nearly moot. *See Am. Ctr. for Civil Justice v. Ambush*, 794 F. Supp. 2d 123,

130 (D.D.C. 2011) (party's "argument with respect to duplicative and costly discovery" deemed

"moot" because it was past the "effective discovery cut-off"). It makes little sense to halt that process now, only to potentially have to re-start it if and when EPA does not finalize its rulemaking as proposed.

And with regard to a limited number of depositions and summary judgment briefing, those are just the usual burdens of litigation present in almost every request for a stay, and do not present the "rare circumstances" in which a stay is appropriate. *Landis*, 299 U.S. at 255; *see Nat'l Indus. For Blind*, 296 F. Supp. 3d at 137–38 ("[I]t is well established that a stay pending the resolution of unrelated legal proceedings is an extraordinary remedy."); *Davis v. D.C. Child & Family Servs. Agency*, Civ. No. 10-1564-RCL, 2011 WL 13266318, at *1–2 (D.D.C. Dec. 6, 2011) (finding that defendants had not carried their burden for a stay where "the closest defendants come to alleging hardship or inequity is their assertion that allowing the case to proceed could subject [them] to additional discovery burdens and, ultimately, additional liability," and concluding that "[a] party's right to proceed in court should not be denied except under the most extreme circumstances") (internal quotation marks omitted). Indeed, staying the litigation before Plaintiffs have the opportunity to undertake depositions risks that key deponents will continue to leave the agency or memories will fade, further prejudicing Plaintiffs. Nor should summary judgment briefing consume large amounts of agency resources given the admittedly limited basis on which EPA asserts its delay is justified. Mot. 9–10.

EPA has failed to make out a clear case of hardship or inequity, much less shown a "compelling reason" or "pressing need" to further delay of this lawsuit to vindicate EPA's unlawful delay. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27 (1983) (where the stay applicant "is the one from whom … performance is sought, a stay of litigation … leaves the recalcitrant party free to sit and do nothing").

## CONCLUSION

EPA has not come close to carrying its "high burden" to demonstrate that this is one of the "particular circumstances" in which a stay is warranted. *Velasco*, 2015 WL 13759884, at *7 (citing *Landis*, 299 U.S. at 255). Instead, EPA's motion is simply another step in EPA's continued efforts to delay fulfilling its mandatory duty to regulate the massive pollution from existing oil and gas sources. Given the substantial prejudice to Plaintiffs from staying this action, the speculative nature of EPA's current proposal, and the lack of hardship to EPA from continuing the litigation, discovery and merits briefing should not be halted. Plaintiffs respectfully request that this Court deny EPA's request for a stay.

Respectfully Submitted,

Dated:  October 18, 2019                     FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General

  /s/ Morgan A. Costello
Morgan A. Costello
Michael J. Myers
Christopher C. Gore
Assistant Attorneys General
Office of the Attorney General
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 776-2392

FOR THE STATE OF CALIFORNIA

XAVIER BECERRA
Attorney General

  /s/ Kavita P. Lesser
Kavita P. Lesser
Jennifer K. Temple
Daniel M. Lucas
Deputy Attorneys General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
(213) 269-6605
*Attorneys for the State of California, by
and through the California Air
Resources Board and Attorney General
Xavier Becerra*

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
Attorney General

  /s/ Jill Lacedonia
Jill Lacedonia
Assistant Attorney General
Office of the Attorney General
55 Elm Street
Hartford, CT 06141-0120
(860) 808-5250

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General

  /s/ Gerald Karr
Gerald Karr
Assistant Attorney General
Illinois Attorney General's Office
69 W. Washington St., 18th Floor
Chicago, IL 60602
(312) 814-3369

FOR THE STATE OF IOWA

THOMAS J. MILLER
Attorney General

  /s/ Jacob Larson
Jacob Larson
Assistant Attorney General
Environmental Law Division
Hoover State Office Building
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
(515) 281-5341

FOR THE STATE OF MAINE

AARON M. FREY
Attorney General

  /s/ Laura E. Jensen
Laura E. Jensen
Assistant Attorney General
Maine Attorney General's Office
6 State House Station
Augusta, ME 04333-0006
(207) 626-8868

FOR THE STATE OF MARYLAND

BRIAN E. FROSH
Attorney General

  /s/ Leah J. Tulin
Leah J. Tulin
Assistant Attorney General
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6962

FOR THE COMMONWEALTH OF
MASSACHUSETTS

MAURA HEALEY
Attorney General

  /s/ Melissa Hoffer
Melissa Hoffer
Chief, Energy and Environment Bureau
Megan Herzog
Special Assistant Attorney General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200


FOR THE STATE OF NEW MEXICO


HECTOR H. BALDERAS
Attorney General

  /s/ William Grantham
William Grantham
Consumer & Environmental Protection
Division
New Mexico Office of the Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 717-3500


FOR THE STATE OF OREGON

ELLEN F. ROSENBLUM
Attorney General

  /s/ Paul Garrahan
Paul Garrahan
Attorney-in-Charge, Natural Resources
Section
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301-4096
(503) 947-4593

FOR THE COMMONWEALTH OF
PENNSYLVANIA

JOSH SHAPIRO
Attorney General

  /s/ Michael J. Fischer
Michael J. Fischer
Chief Deputy Attorney General
Robert A. Reiley
Assistant Director, Pennsylvania
Department of Environmental Protection
Environmental Protection Section
Pennsylvania Office of the Attorney General
Strawberry Square
Harrisburg, PA 17120
(215) 560-2171


FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
Attorney General

  /s/ Gregory S. Schultz
Gregory S. Schultz
Special Assistant Attorney General
Rhode Island Department of Attorney
General
150 South Main Street
Providence, RI 02903
(401) 274-4400


FOR THE STATE OF VERMONT

THOMAS J. DONOVAN, JR.
Attorney General

  /s/ Nicholas F. Persampieri
Nicholas F. Persampieri
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3186

FOR THE STATE OF WASHINGTON

ROBERT W. FERGUSON
Attorney General

  /s/ Emily C. Nelson
Emily C. Nelson
Assistant Attorney General
Washington State Attorney General's Office
PO Box 40117
Olympia, WA 98504
(360) 586-4607

FOR THE DISTRICT OF COLUMBIA

KARL A. RACINE
Attorney General

Catherine A. Jackson
Chief, Public Integrity Section

  /s/ David S. Hoffmann
David S. Hoffmann
Assistant Attorney General
Office of the Attorney General
of the District of Columbia
441 Fourth St. NW Ste. 600-S
Washington, D.C. 20001
(202) 442-9889

FOR THE CITY OF CHICAGO

EDWARD N. SISKEL
Corporation Counsel

  /s/ Jared Policicchio
Jared Policicchio
Supervising Assistant Corporation Counsel
Admitted *Pro Hac Vice*
30 N. LaSalle Street, Suite 1400
Chicago, IL 60602
(312) 744-1438

Dated:  October 18, 2019        /s/    Susannah L. Weaver
       Susannah L. Weaver, D.C. Bar # 1023021
       Sean H. Donahue, D.C. Bar. # 940450
       Donahue, Goldberg & Weaver, LLP
       1008 Pennsylvania Ave. SE
       Washington, DC 20003
       Phone: (202) 569-3818 (Ms. Weaver)
       Phone: (202) 277-7085 (Mr. Donahue)
       susannah@donahuegoldberg.com
       sean@donahuegoldberg.com

       Peter Zalzal, CO Bar # 42164
       Rosalie Winn, CA Bar # 305616
       Rachel Fullmer, CO Bar # 49868
       Environmental Defense Fund
       2060 Broadway, Suite 300
       Boulder, CO 80302
       Phone: (303) 447-7214 (Mr. Zalzal)
       Phone: (303) 447-7212 (Ms. Winn)
       Phone: (303) 447-7208 (Ms. Fullmer)
       pzalzal@edf.org
       rwinn@edf.org
       rfullmer@edf.org

       *Counsel for Plaintiff-Intervenor*
       *Environmental Defense Fund*

## CERTIFICATE OF SERVICE

I, Morgan A. Costello, hereby certify that on this 18th day of October 2019, I

electronically filed the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION

TO STAY PENDING CONCLUSION OF RULEMAKING with the Clerk of Court using the

ECF system, which effected service on:

        Heather E. Gange
        *Counsel for Defendants*

                 /s/ Morgan A. Costello
                Morgan A. Costello