**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| State of New York, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 18-cv-0773 |
| ) | |
| U.S. Environmental Protection Agency, et al., ) | Hon. Reggie B. Walton |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY PENDING CONCLUSION OF RULEMAKING (ECF 59)

Defendants U.S. Environmental Protection Agency's and Andrew Wheeler's (collectively "EPA") Motion to Stay this case pending finalization of a proposed nationwide rule that is sufficiently likely to moot this case by June 2020 ("Proposed Rule") should be granted, with instructions that EPA submit status reports regarding the rulemaking process at 60-day intervals. Plaintiffs mischaracterize EPA's motion, which does not request an open-ended or indefinite stay.  Instead, EPA requested a stay during the final stages of a rulemaking process that is expected to conclude by June 2020, and offered to provide regular status reports to the Court. Plaintiffs' argument that it is purely speculative whether the final rule will ever issue or moot the case also lacks merit.  EPA is affirmatively required to finalize the Proposed Rule as soon as practicable, and the Proposed Rule is sufficiently likely to remove the Agency's obligation and authority to issue the guidelines at issue on at least one of the two alternative proposed grounds. Moreover, Plaintiffs failed to establish that the stay will cause them to suffer any more harm than will result under the current case schedule, while EPA clearly established that it will suffer inequity and hardship absent the stay under the unique facts and circumstances of this case.

EPA's Motion to Stay therefore should be granted and the case stayed pending completion of the rulemaking process for the Proposed Rule, during which time EPA will submit status reports at 60-day intervals.

## ARGUMENT

## I.   EPA IS NOT SEEKING AN INDEFINITE STAY.

### A.   EPA Seeks a Stay for a Short, Clearly Defined Term with Status Reporting.

Contrary to Plaintiffs' arguments at pages 12-14 of their opposition, EPA has never sought a stay for an indefinite term.  Instead, EPA's motion clearly seeks a stay for the final stages of the rulemaking process that it expects to conclude in June 2020.  *See* ECF 59, at 1-2, 7, 12; 59-1, at 4, ¶ 14.  EPA also has offered to provide 60-day status reports during the pendency of that stay to assure the Court that the process is on track.  ECF 59, at 2, 12.  Consequently, the Agency's motion cannot credibly be characterized as one for an indefinite stay.[1]

The cases that Plaintiffs cite of their opposition brief do not counsel otherwise.  For example, in *Belize Social Development Ltd. v. Government of Belize*, the movant sought to stay enforcement of a foreign arbitration award until a case pending before the Belize Supreme Court was resolved, without specifying what would constitute a resolution of that case, when such resolution might occur, or offering to provide status reports. 668 F.3d 724, 732 (D.C. Cir. 2012).  Similarly, in *HT S.R.L. v. Velasco*, the movant sought to stay a civil case for an unspecified period of time pending the conclusion of a criminal investigation against him in Italy.  Case No. 15-cv-664, 2015 WL 13759884 *7 (Nov. 13, 2015) (quoting *Belize,* 668 F.3d at 732).  And in

---

[1] Indeed, even absent a specific, predicted decision date, the D.C. Circuit (despite opposition from Respondent-Intervenor Environmental Defense Fund and others) stayed challenges to the new source performance standards that triggered EPA's obligation to issue the guidelines at issue ("2016 NSPS") during the same review under Executive Order No. 13783.  *See American Petroleum Inst. v. EPA*, Case No. 13-1108, Dkt. No. 1675813 (D.C. Cir. 2017).

*Landis*, the movant sought to stay one federal district court case pending the resolution of a different district court case and all potential appeals (through and including to the Supreme Court). 299 U.S. at 256-57 (granting stay until district court decision issued, but denying as "immoderate" with respect to subsequent proceedings whose length was not "susceptible of prevision and description"). EPA's motion in this case suffers from none of those deficiencies, as EPA seeks a stay pending completion of the public notice-and-comment rulemaking process for the Proposed Rule, which is expected to occur by June 2020, and EPA has offered to provide the Court with status reports at 60-day intervals during the pendency of that stay.

Also contrary to Plaintiffs' arguments, it is sufficiently likely that EPA will conclude the rulemaking process for the Proposed Rule. Unlike the proposed actions listed on page 13 of Plaintiffs' opposition—which EPA undertook on its own initiative and is not under any obligation or deadline to complete—the Proposed Rule was developed in response to Executive Order No. 13,783, 82 Fed. Reg. 16,093, 16,096, Sec. 7(a) (Mar. 31, 2017). *See* 84 Fed. Reg. at 50,246; ECF 59, at 4. That Executive Order requires EPA to review, and if appropriate, suspend, revise, or rescind the 2016 NSPS and related rules and guidance "as soon as practicable." [2] 82

---

[2] The Executive Order similarly requires EPA to review and conclude any appropriate action to "suspend, revise or rescind" four other actions "as soon as practicable." 82 Fed. Reg. 16093, 16,095. Based on its review, EPA already has repealed all but one of those actions, which EPA proposed to revise. *See* REPEAL OF THE CLEAN POWER PLAN; EMISSION GUIDELINES FOR GREENHOUSE GAS EMISSIONS FROM EXISTING ELECTRIC UTILITY GENERATING UNITS; REVISIONS TO EMISSION GUIDELINES IMPLEMENTING REGULATIONS, 84 Fed. Reg. 32520 (July 8, 2019); EPA'S RESPONSES TO PUBLIC COMMENTS ON THE EPA'S REPEAL OF CARBON DIOXIDE EMISSION GUIDELINES FOR EXISTING STATIONARY SOURCES: ELECTRIC UTILITY GENERATING UNITS, CHAPTER 5 – PROPOSED RESCISSION OF LEGAL MEMORANDUM (June 2019); REVIEW OF STANDARDS OF PERFORMANCE FOR GREENHOUSE GAS EMISSIONS FROM NEW, MODIFIED, AND RECONSTRUCTED STATIONARY SOURCES: ELECTRIC UTILITY GENERATING UNITS; PROPOSED RULE, 83 Fed. Reg. 65,424 (Dec. 20, 2018); and WITHDRAWAL OF PROPOSED RULES: FEDERAL PLAN REQUIREMENTS FOR GREENHOUSE GAS EMISSIONS FROM ELECTRIC UTILITY GENERATING UNITS CONSTRUCTED ON OR BEFORE JANUARY 8, 2014; MODEL TRADING RULES; AMENDMENTS TO FRAMEWORK REGULATIONS; AND CLEAN ENERGY INCENTIVE PROGRAM DESIGN DETAILS, 82 Fed. Reg. 16,144 (Apr. 3, 2017).

Fed. Reg. at 16,096, Sec. 7(a).  Because the Proposed Rule was issued pursuant to that Executive

Order, EPA is not free to postpone it or simply walk away from it as Plaintiffs argue at pages 12-

14 of their opposition.  Rather, the Agency has been directed by the Chief Executive to take final

action as soon as practicable.  EPA already held a public hearing on October 17, 2019, the

comment period closes on November 25, 2019, and the Agency anticipates that it will take that

final action by June 2020.  *See* ECF 59-1, at 4, ¶¶ 13-14.[3]

> **B.    It Is Sufficiently Likely That the Final Version of the Proposed Rule
> Will Moot This Case.**

Contrary to the Plaintiffs' arguments at pages 12-14 of their opposition, EPA's motion is

not based on a purely speculative future event because there is no uncertainty that final action on

the Proposed Rule is likely to moot this case.  *See* ECF 62, at 12-14; 84 Fed. Reg. 50,244 (Sept.

24, 2019).  The Proposed Rule, among other things: (1) proposes to rescind the new source

performance standards that triggered EPA's obligation to develop the guidelines at issue under

40 C.F.R. Part 60, Subpart Ba[4] on two alternative grounds; and (2) expressly states that such

revocation "would obviate the need for the development of emission guidelines under CAA

Section 111(d) and 40 CFR part 60, subpart B[a] to address methane emissions from existing

sources…"  84 Fed. Reg. at 50,254.

---

[3]  For this same reason, EPA also is amenable to a stay through June 30, 2019, with status
reporting at 60-day intervals, after which the parties should submit appropriate motions or a
proposed order to govern further proceedings.

[4]  On November 17, 1975, as required by CAA section 111(d) of the CAA, EPA published
regulations that established a procedure for States to follow to develop plans for regulating
certain emissions from existing sources.  40 Fed. Reg. 53,340 (Nov. 17, 1975) (codified at 40
C.F.R. pt. 60, subpt. B).  Over the years, EPA has revised its CAA section 111(d) implementing
regulations several times, most recently on July 8, 2019.  84 Fed. Reg. 32,520 (codified at 40
C.F.R. pt. 60, subpt. Ba).  The recently amended regulations at Subpart Ba, rather than Subpart
B, now govern the guidelines at issue in this case.  40 C.F.R. § 60.20a(a).

Plaintiffs do not dispute that finalizing either of the proposed alternatives would remove EPA's obligation and authority to promulgate the guidelines at issue.  Instead, Plaintiffs argue that "EPA cannot credibly say with any certainty when, if, or in what form the final rule will become effective."  ECF 62, at 13.  This is incorrect.

As explained above, EPA is required pursuant to Executive Order 13783 to take final action on the Proposed Rule, and anticipates doing so in June 2020.  As with all notice-and-comment rulemakings, EPA also cannot state with certainty what the substantive outcome of any final rule will be before it is issued.  However, that alone does not reduce to pure speculation the likelihood that final action on the Proposed Rule will rescind the methane standards, leaving EPA without authority to promulgate the guidelines at issue.  The Proposed Rule—which includes two alternative grounds for rescinding the methane standards for new sources—is the result of careful and considered Agency analysis from April 2017 through September 2019.  *See* 82 Fed. Reg. 16,331 (Apr. 4, 2017) (initiating review of performance standards); 84 Fed. Reg. 50,244 (Proposed Rule).  EPA therefore believes that rescission of the methane standards on at least one of the alternative grounds in the Proposed Rule is sufficiently likely to merit a stay under *Landis*.

Again, the cases cited by Plaintiffs do not counsel otherwise.  For example, the Supreme Court in *Landis* upheld a stay pending the resolution of a related district court case, the final outcome of which was unknown (and certainly not within the control of the agency requesting a stay).  299 U.S. at 256.  In *Garcia v Acosta*, the court emphasized its "broad discretion to stay a case pending the outcome of proceedings in another forum," and only denied a stay where the Department of Labor had not yet published even a proposed rulemaking regarding the visa program at issue, and could not establish what its terms would be or whether it would likely

moot the case.  393 F. Supp. 3d 93, 110-11 (D.D.C. 2019).  Similarly, in *Alternatives Research & Development Foundation v. Glickman*, the court denied a stay where the USDA was considering an administrative petition seeking regulatory amendments, but had not determined how and when it would respond, such that "it [was] *purely* speculative at [that] time whether *any* future agency action [would] change the status quo."  101 F. Supp. 2d 7, 15-16 (D.D.C. 2000) (emphases added).  Finally, in *American Hospital Association v. DHHS*, the agency admitted that it "was not certain" whether its proposed rule would moot the case or not, and plaintiffs were seeking an expedited decision.  Case No. 18-cv-2112, 2018 WL 5777397 *2-3 (D.D.C. Nov. 2, 2018).  In this case, however, EPA is obligated to finalize the Proposed Rule, has represented in a sworn declaration that it expects to do so by June 2020, and has explained why this case is sufficiently likely to be mooted based on the content of the Proposed Rule.

For all of these reasons, it has always been clear that EPA is requesting a stay for a short, clearly defined term, after which the case likely will be mooted.  EPA therefore, at most, needs to establish that it will suffer hardship and inequity absent the stay.  *Landis*, 299 U.S. at 255.

## II.   THE REQUESTED STAY WILL NOT HARM PLAINTIFFS.

Plaintiffs also have failed to establish that they would suffer harm that is attributable to the requested stay.  EPA strongly disagrees with the allegations of harm that Plaintiffs attribute to the lack of the guidelines at issue in their opposition.[5]  ECF 62, at 10-11.  Nonetheless, even if

---

[5]  For example, Plaintiffs erroneously calculate emissions and resulting harm from the date they allege the guidelines should have issued.  ECF 62, at 10-11.  As EPA has clearly explained, pursuant to CAA section 111(d) and its implementing regulations, the *States*—not EPA— regulate existing sources in the oil and natural gas sector.  *See* ECF 59, at 2; 40 U.S.C. § 7411(d).  The emission guidelines at issue would provide information for the development of *state* plans to regulate emissions from such sources.  *See* 40 C.F.R. §§ 60.22a(b).  Any reductions of methane emissions resulting from promulgation of emission guidelines therefore would not occur until much later when those state plans were implemented.

Plaintiffs also erroneously presume that the emission guidelines at issue—which would apply to older, existing sources—would necessarily recommend the same level of emission

Plaintiffs' allegations were correct (which they are not), those allegations do not establish that *the requested stay itself* would result in some increment of harm that otherwise would not occur. *Landis*, 299 U.S. at 255 (a movant must make a clear showing "of hardship or inequity in being required to go forward, if there is even a fair possibility that *the stay for which he prays* will work damage to some one else") (emphasis added).

Even absent the requested stay, the guidelines at issue will not be promulgated during the relevant period—*i.e.*, from the present through June 2020.  Instead, during that time the parties will conduct discovery and partially brief summary judgment motions, at which point the case likely will need to be dismissed on mootness grounds.  ECF 50, at 2 (scheduling order).  The *stay* therefore will not result in any increment of alleged harm that Plaintiffs will not suffer anyway during the relevant period.  Consequently, the harm that Plaintiffs allege in their opposition is not the type of harm that would weigh against a stay under *Landis*, and EPA does not need to make a special showing in order to obtain the stay requested in its motion.  *Landis*, 299 U.S. at 255.

## III.     EPA HAS CLEARLY DEMONSTRATED THAT IT WILL SUFFER INEQUITY AND HARDSHIP ABSENT THE REQUESTED STAY.

Moreover, under the unique facts and circumstances of this case, EPA *has* clearly demonstrated that requiring the Agency to engage in the remaining discovery and motions practice is inequitable and imposes an unnecessary hardship.  First, the remaining discovery and summary judgment briefing are futile because the case is sufficiently likely to be mooted when the Proposed Rule is finalized, and that finalization is sufficiently likely to occur by June 2020.  Under the Court's scheduling order, summary judgment briefing will not even close until June

---

reductions that the 2016 NSPS require for new sources.  *See* 40 C.F.R. §§ 60.20a(b), (e), 60.22a(b)(5).  Moreover, Section 111(d) permits States to "take into consideration … the remaining useful life of the existing source[s]" in setting standards, which is a factor unique to existing sources that did not apply to the 2016 NSPS.  42 U.S.C. § 7411(d).

23 or July 23, 2020.  ECF 50, at 2.  The case therefore is highly unlikely to be resolved on the merits before it is mooted and must be dismissed.

Second, even if the case were going to be resolved on the merits through summary judgment proceedings, the bulk of the discovery that has yet to be conducted would not speak to the issues actually before the Court.  Unlike in most unreasonable delay suits, in this case EPA has clearly stated that its review of the 2016 NSPS under Executive Order 13878 "is the reason why the Agency has not issued the Methane Guidelines [at issue] to date (*i.e.*, is the source of the alleged "delay" at issue in this case)."  ECF 59, at 10; *id.* at 4, 10 n.8; ECF 59-1, at 3, ¶ 11.  EPA also has expressly committed not to defend this unreasonable delay suit on the customary grounds of competing priorities, other agency actions, or lack of time or other resources, as familiar under *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) (hereafter "*TRAC*") and its progeny.  *See* ECF 59, at 9-11 & nn.7, 8.

EPA's liability therefore will turn on the reasonableness of postponing development of the guidelines at issue during the review that led to the Proposed Rule under Executive Order 13878.  In contrast, the bulk of Plaintiffs' remaining discovery seeks information which would be relevant, if at all, only under the *TRAC* factors reliance on which EPA has forthrightly disclaimed or in a different case challenging the substantive merits of agency actions that are not before the Court in this suit (*e.g.*, the ICR discussed at pages 5-6 of Plaintiffs' opposition)—a situation that Plaintiffs conspicuously fail to address in their opposition.  Therefore, that discovery will not help the Court or the parties resolve *this* case, and it is clearly inequitable to require EPA to continue to participate in it.  *Id.*

Third, the six noticed depositions (particularly the Fed. R. Civ. P. 30(b)(6) deposition) and remaining document discovery will impose the significant financial, time, resource, and

logistic burdens identified in EPA's opening brief.  *See* ECF 59, at 11.  Plaintiffs do not deny

this, instead arguing that having to defend a suit, without more, ordinarily is not the kind of

hardship that warrants a stay under *Landis*.  ECF 62, at 15-17.  In a different case, where the

discovery was directed to issues actually before the Court, EPA might not disagree.  In this case,

however, the discovery is both futile *and* would serve no useful purposes even if the case were to

proceed to resolution on the merits.

Based on these unique facts and circumstances, the very real burdens that the remaining

discovery and summary judgment briefing will impose on EPA constitute an unnecessary

hardship that warrants a stay under *Landis*.  299 U.S. at 255; *see* ECF 59, at 9-12.

## CONCLUSION

For all of the foregoing reasons, and those explained in the EPA's Motion to Stay, EPA's

motion should be granted and the case stayed pending completion of the rulemaking process with

status reporting at 60-day intervals.

Respectfully submitted,

Dated:  October 25, 2019

   /s/ Heather E. Gange
Heather E. Gange
D.C. Bar. 452615
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-4206
(202) 514-8865
Heather.Gange@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of October, 2019, I caused a copy of the foregoing document to be served by the Court's CM/ECF system on all counsel of record in this matter.

/s/ Heather E. Gange
Heather E. Gange