# Exhibit 10

## Deposition of Peter Tsirigotis (Feb. 13, 2020) (excerpts and selected exhibits)

## Plaintiffs' Motion For Summary Judgment

STATE OF NEW YORK, *et al.*, and ENVIRONMENTAL DEFENSE FUND
v.
ANDREW WHEELER, *et al.*
Civil Action No. 18-cv-0773 (RBW)

```
            UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF COLUMBIA

                        + + + + +
```

_____
                                    :
**IN THE MATTER OF:**               :
                                    :
**STATE OF NEW YORK, et al.,**      :
                                    :
    **Plaintiffs,**            :
                                    :
**ENVIRONMENTAL DEFENSE FUND,**     :
                                    : Case No.
    **Plaintiff-Intervenor,** : 18-cv-0773
                                    :
    **v.**                    :
                                    :
**U.S. ENVIRONMENTAL PROTECTION**   :
**AGENCY, et al.,**                 :
                                    :
    **Defendants.**           :
                                    :
_____:

        **Thursday,**
        **February 13, 2020**

        **Washington, DC**

**DEPOSITION OF:**

                **PETER TSIRIGOTIS**

**called for examination by Counsel for the Plaintiffs, pursuant to Notice of Deposition, in the Office of the Attorney General for the District of Columbia, located at 441 4th Street, N.W., Washington, D.C. 20001, when were present**

**on behalf of the respective parties:**

```
APPEARANCES:

On Behalf of the Plaintiffs:

MICHAEL J. MYERS, ESQ.
MORGAN COSTELLO, ESQ.
CHRISTOPHER GORE, ESQ.
Office of the Attorney General
Environmental Protection Bureau
The Capitol
Albany, New York 12224
518-776-2382 (Myers)
518-776-2392 (Costello)
michael.myers@ag.ny.gov
morgan.costello@ag.ny.gov

KAVITA P. LESSER, ESQ.
Deputy Attorney General
California Department of Justice
Environment Section
300 South Spring Street
Los Angeles, California 90013
213-269-6605
kavita.lesser@doj.ca.gov

DAVID S. HOFFMAN, ESQ.
SARAH KOGEL-SMUCKER, ESQ.

Assistant Attorneys General

One Judiciary Square

441 4th Street, N.W.

Washington, D.C. 20001

202-442-9889

david.hoffmann@dc.gov
```

On Behalf of the Defendants:

HEATHER E. GANGE, ESQ.
United States Department of Justice
Environmental & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
202-514-4206
heather.gange@usdoj.gov

AMY BRANNING, ESQ.
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460
202-564-1744

```
 1          A      After this, if we could take another
 2     break.
 3          Q      Absolutely, yes.  Done?
 4          A      Yes.
 5          Q      So for the record, PT-17, the first
 6     page is an email from Brenda Shine to Peter
 7     Tsirigotis, with a date of February the 23rd,
 8     2016, subject, forward ICR talking points.  The
 9     Bates is 0421324.  And attached to that is a
10     one-page document with the title Oil and Gas ICR.
11                 Do you recall asking Brenda Shine to
12     provide specific examples of information that
13     you'd be seeking through the ICR?
14          A      I don't recall.
15          Q      Can you tell me a little bit about
16     Brenda Shine's work on the ICR?  What was her
17     roles and responsibilities, in terms of the ICR?
18          A      My understanding is she was the
19     technical expert that -- the engineer that was a
20     major part of constructing the ICR.  She was the
21     main staff person, I guess.  The most correct way
22     is that was the main staff person in Penny
```

1   other information collection that we were doing.

2       Q   So in terms of the work that you guys

3   were doing in developing the ICR and thinking

4   about what that was going to mean for existing

5   source regulations, did you receive information

6   from Joe Goffman or anyone else in leadership

7   that -- did you hear what the president said, we

8   need to expedite things on this rulemaking?

9       A   I don't recall.  It wouldn't have been

10  out of the ordinary if something like this

11  happened, but I don't recall that specific thing.

12  I do recall that the Agency was trying to get a

13  handle on existing sources.  We were moving

14  expeditiously to do an ICR concurrently with

15  finalizing a new source rule.  So, the facts, to

16  me, suggest we were moving pretty quickly.

17      Q   Although you -- the first sentence

18  refers to -- let me strike that question for the

19  moment.  The next bullet down refers to what

20  Environment Canada was doing, in terms of methane

21  regulations.

22      The last sentence there, under that

1           BY MR. MYERS:

2           Q      Ask you to take a look at what's been

3    marked as PT-21.  Let me know when you're done

4    reviewing that.

5                  Ready?  Okay.  PT-21 is a memorandum

6    from Penny Lassiter to Peter Tsirigotis, the

7    subject, notice EPA's actions to reduce methane

8    emissions from oil and natural gas industry draft

9    information collection request for existing

10   sources action memorandum.  Peter, did you

11   receive a copy of this memo seeking your approval

12   of the ICR?

13          A      I don't recall.  I assume I did.

14          Q      Can you give me a sense of the amount

15   of effort that went into putting the ICR

16   together?

17          A      I don't know the specifics.  I know

18   that folks took quite a bit of time putting it

19   together.  We had another group focusing on it

20   while we were also putting out the new source

21   guidelines, but I don't have specific knowledge

22   of exactly how long it took.

1   discussion?

2           THE WITNESS:  Yes.

3           BY MR. MYERS:

4       Q   And I believe just before lunch you
5   were referring to the ICR that you guys did in
6   the context of the mercury and air toxic
7   standards and how you were under a court order to
8   move forward with the regulations after you did
9   the ICR.

10      A   Okay.

11      Q   Just talking about this case now, did
12  you understand that the Agency was under a legal
13  obligation to issue existing source regulations
14  after it had issued the 2016 NSPS for methane?

15      A   Yes.

16      Q   I think where we left off was talking
17  about the second draft of the ICR.  Did EPA
18  receive any comments on the second draft of the
19  ICR?

20      A   I'm not aware.

21      Q   Were any substantive changes made as
22  a result of any comments you guys received on the

1  **A**   I'm not aware of having participated
2  in any meetings outside of my division.  I
3  imagine at some point, we had to have -- we had a
4  discussion about implementing the decision.  And
5  we probably had meetings around that after the
6  decision was made.
7  **Q**   So no one ever asked you, hey Peter,
8  do you think we should withdraw the ICR?
9  **A**   Who, leadership?
10 **Q**   Yes.
11 **A**   No.
12 **Q**   How did you find out that the ICR was
13 being withdrawn?
14 **A**   I don't exactly recall, but it was
15 right around where the Agency noticed that we
16 were withdrawing the ICR.  I can't recall
17 specifically the when and how.
18 **Q**   So no one asked you before the
19 decision was made whether or not the Agency
20 should withdraw the ICR?
21 **A**   No.
22 **Q**   Do you know if anyone on your staff

1      A     Yes.

2      Q     It states, the withdrawal is occurring

3  because EPA would like to assess the need for the

4  information that the Agency was collecting

5  through these requests, and reduce burdens on

6  businesses while the Agency assesses such need.

7  Were you ever asked, before this Federal Register

8  notice went out, whether such an assessment of

9  need that's referred to here was warranted?

10     A     Not that I recall.

11     Q     Before this Federal Register notice

12 went out, were you ever asked whether the

13 information that you were collecting in the ICR

14 was, in fact, needed?

15           MS. GANGE:  Within what time frame?

16           BY MR. MYERS:

17     Q     Before the notice went out, so before

18 March the 7th.

19     A     Specifically by leadership?

20     Q     Yes.

21     A     Not that I recall.

22     Q     What was the basis for the Agency's

1  notice and the letter you sent out?

2      A    Not that I can recall.

3      Q    So after you sent out these letters,

4  did the Agency take any steps, at that point, to

5  assess the need for the information that you had

6  been collecting?

7      A    Not that I'm aware of.

8      Q    In your mind, at that time, after you

9  sent this letter out, what was the next step, in

10 terms of what was going to happen with the ICR?

11     A    There were probably procedural things

12 to do because this information was -- the

13 information that we had gotten -- I'm sure there

14 were steps that needed to be taken to preserve it

15 and all of that.  I presume that was done.  I

16 don't have direct knowledge of that.

17     Of course, the Agency said that we

18 wanted to assess that information.  I'm just not

19 aware of, up to this point, us having done that.

20     MS. GANGE:  Before we move on to this,

21 do you need a break, or want to keep going?

22     THE WITNESS:  I'm good for now.  After

## AUTHENTICATION BY SIGNATURE

I, the undersigned, do hereby certify by my signature hereunder that I have read the foregoing deposition of testimony given by me on February 11, 2020, and find said transcription to be a true and accurate record, as corrected.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2020

*P. Tsirigotis*
PETER TSIRIGOTIS

Sworn to and subscribed before me this _____ day of _____, 20__ __.

_____
Notary Public

My commission expires _____.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C. 20005-3701   www.nealrgross.com