**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| State of New York, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. Environmental Protection Agency, *et al*., | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 1:18-cv-0773

Hon. Reggie B. Walton

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

United States Department of Justice
Environment & Natural Resources Division

Dated:  August 14, 2020

   /s/ Heather E. Gange
HEATHER E. GANGE
D.C. Bar 452615
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel. 202.514.4206
Heather.Gange@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.      BACKGROUND ...........................................................................................................2

      A.     Legal Background ...........................................................................................2

      B.     Factual Background ........................................................................................4

            1.     New Source Performance Standards.....................................................4

            2.     Emission Guidelines ...........................................................................4

            3.     Litigation Background .........................................................................7

STANDARD OF REVIEW ...................................................................................................8

ARGUMENT .........................................................................................................................9

I.      THIS CASE IS NOW MOOT AND SHOULD BE DISMISSED FOR
      LACK OF SUBJECT MATTER JURISDICTION ....................................................9

II.     EPA REASONABLY POSTPONED GUIDELINE PREPARATION
      DURING THE E.O. REVIEW ...................................................................................10

      A.     EPA's Decision to Postpone Guideline Development during the E.O.
            Review Was Objectively Reasonable ...........................................................11

      B.     EPA's Decision Also Was Reasonable Based on the Factors Established
            in the D.C. Circuit's *TRAC* decision........................................................14

            1.     EPA's decision to postpone development of the Methane
                  Guidelines pending completion of the E.O. Review was governed
                  by a "rule of reason" ..........................................................................14

            2.     Congress provided no timetable for the development of the
                  Methane Guidelines ...........................................................................17

             3.     The interests at issue do not weigh against EPA's decision to
                  postpone development of the Methane Guidelines pending
                  completion of the E.O. Review...........................................................19

            4.     There was no impropriety in EPA's decision to postpone
                  development of the Methane Guidelines ..............................................21

III.   THE COURT SHOULD BIFURCATE LIABILITY AND REMEDY
        AS PLAINTIFFS PROPOSE....................................................................................24

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ................................................................................................10

*Alvarez v. Smith*,
    558 U.S. 87 (2009) ................................................................................................10

*Am. Bar Ass'n v. FTC*,
    636 F.3d 641 (D.C. Cir. 2011) .............................................................................10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................8

*Bldg. & Const. Trades Dep't v. Allbaugh*,
    295 F.3d 28 (D.C. Cir. 2002) ...............................................................................21

*Burlington Truck Lines v. United States*,
    371 U.S. 156 (1962) ................................................................................................8

*Cierco v. Mnuchin*,
    857 F.3d 407 (D.C. Cir. 2017) .............................................................................10

*Citizens for Responsibility & Ethics in Washington v. SEC*,
    916 F. Supp. 2d 141 (D.D.C. 2013) .......................................................................8

*City of Dover v. EPA*,
    956 F. Supp. 2d 272 (D.D.C. 2013) .......................................................................1

*Clean Air Council v. Pruitt*,
    862 F.3d 1 (D.C. Cir. 2017) ...........................................................................16, 22

*Democracy Forward Found. v. Pompeo*,
    Case No. 1:19-cv-1773, 2020 WL 4219817 (D.D.C. July 23, 2020) ....................8

*Department of Commerce v. New York*,
    139 S. Ct. 2551 (2019) .........................................................................................22

*Didban v. Pompeo*,
    435 F. Supp. 3d 168 (D.D.C. 2020) .....................................................................14

*Fisher v. Pension Benefit Guaranty Corp.*,
    __ F. Supp. 3d __, 2020 WL 3402337 (D.D.C. June 19, 2020) ...........................15

*Geneme v. Holder*,
   935 F. Supp. 2d 184 (D.D.C. 2013) .......................................................................14

*Izaak Walton League of Am. v. Johnson*,
   400 F. Supp.2d 38 (D.D.C. 2005) ...............................................................10, 16, 23

*Lemon v. Geren*,
   514 F.3d 1312 (D.C. Cir. 2008) ..............................................................................10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ...............................................................................................8, 15

*Murphy v. Hunt*,
   455 U.S. 478 (1982) ................................................................................................10

*NAACP v. Trump*,
   315 F. Supp. 3d 457 (D.D.C. 2018) ........................................................................15

*New York Public Interest Group v. Whitman*,
   214 F. Supp. 2d 1 (D.D.C. 2002) ..............................................................................9

*Norton v. SUWA*,
   542 U.S. 55 (2004) ...................................................................................................8

*Penthouse Int'l, Ltd. v. Meese*,
   939 F.2d 1011 (D.C. Cir. 1991) ..............................................................................10

*Sherley v. Sebelious*,
   689 F.3d 776 (D.C. Cir. 2012) ................................................................................21

*Sierra Club v. Browner*,
   130 F. Supp. 2d 78 (D.D.C. 2001),
   *aff'd* 285 F.3d 63 (D.C. Cir. 2002) ...........................................................................9

*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987) ..................................................................................1

*Telecomm. Research & Action Ctr. v. FCC*,
   70 F.2d 70 (D.C. Cir. 1984) .....................................................................8, 9, 11, 14

*Tummino v. Von Eschenbach*,
   427 F. Supp. 2d 212 (E.D.N.Y. 2006) ....................................................................23

## STATUTES

42 U.S.C. § 7411(b)(1)(B) ...............................................................................2, 18

42 U.S.C. § 7411(d) ...................................................................................3, 9, 20

42 U.S.C. § 7411(d)(1) ..................................................................................3, 4, 6

42 U.S.C. § 7604(a) ...................................................................1, 9, 10, 14, 24

42 U.S.C. § 7604(a)(2) ........................................................................................1

42 U.S.C. § 7607(b)(1) ..............................................................................7, 16, 23

42 U.S.C. § 7607(d)(7)(B) ................................................................................18

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56(a) .........................................................................................8

## CODE OF FEDERAL REGULATIONS

40 C.F.R. § 60.21a(a) ....................................................................................3, 9

40 C.F.R. § 60.21a(b) ........................................................................................6

40 C.F.R. § 60.21a(e) ........................................................................................6

40 C.F.R. § 60.22a ..........................................................................................1, 6

40 C.F.R. § 60.22a(a) ...............................................................................3, 4, 17

40 C.F.R. § 60.23a(a) ....................................................................................3, 20

40 C.F.R. § 60.23a(b) ....................................................................................3, 20

40 C.F.R. § 60.23a ..............................................................................................9

40 C.F.R. § 60.24a ........................................................................................3, 20

40 C.F.R. § 60.24a(d) .......................................................................................20

40 C.F.R. § 60.27a(b) .......................................................................................20

40 C.F.R. § 60.27a(c) .........................................................................................4

40 C.F.R. § 60.27a(g) .........................................................................................4

**FEDERAL REGISTER**

36 Fed. Reg. 24,876 (Dec. 23, 1971) ................................................................................18

40 Fed. Reg. 53,340 (Nov. 17, 1975) .............................................................................3, 17

41 Fed. Reg. 3826 (Jan. 26, 1976) ....................................................................................18

42 Fed. Reg. 55,796 (Oct. 18, 1977) .................................................................................18

45 Fed. Reg. 26,294 (Apr. 17, 1980) .................................................................................18

54 Fed. Reg. 52,188 (Dec. 20, 1989) ................................................................................18

81 Fed. Reg. 35,824 (June 3, 2016) .....................................................................................4

82 Fed. Reg. 12,817 (Mar. 7, 2020) .........................................................................5, 11, 17

82 Fed. Reg. 16,093 (Mar. 31, 2017) ...................................................................5, 7, 11, 12

82 Fed. Reg. 16,331 (Apr. 4, 2017) .............................................................................6, 12

84 Fed. Reg. 32,520 (July 8, 2019) ......................................................................................3

84 Fed. Reg. 50,244 (Sept. 24, 2019) ..................................................................................6

**INTRODUCTION**

Plaintiffs have asserted an unreasonable delay claim pursuant to Clean Air Act ("CAA") Section 304(a), 42 U.S.C. § 7604(a), which grants the district courts "jurisdiction to compel. . . agency action unreasonably delayed." [1]  EPA does not dispute that it was subject to a mandatory duty[2] to issue guidelines under which States would regulate methane emissions from existing sources in the oil and natural gas sector within their jurisdiction ("Methane Guidelines") until the underlying oil and natural gas new source performance standards for methane ("Methane NSPS") were rescinded in a final EPA rule signed on August 13, 2020 ("Final Rule").[3]  Now that the Methane NSPS has been rescinded, however, EPA no longer has either the authority or a duty to issue Methane Guidelines.  This case therefore is prudentially moot at this time.  Once the Final Rule becomes effective upon publication in the Federal Register, which EPA expects to occur within several weeks, the case will be moot under Article III of the U.S. Constitution. Consequently, the case should be dismissed for lack of subject matter jurisdiction.

---

[1]  The unreasonable delay provision is found in the text below the enumerated list in 42 U.S.C. § 7604(a).

[2]  That duty was not non-discretionary within the meaning of 42 U.S.C. § 7604(a), because EPA retains discretion as to the time frame within which to issue guideline documents under 40 C.F.R. § 60.22a.  *See Sierra Club v. Thomas*, 828 F.2d 783, 790-91 (D.C. Cir. 1987) ("In the absence of a readily-ascertainable deadline . . . it will be almost impossible to conclude that Congress . . . deprive[d the agency] of all discretion over the timing of its work."); *City of Dover v. EPA*, 956 F. Supp.2d 272, 282-83 (D.D.C. 2013) (same).  Plaintiffs therefore are mistaken when they refer to the duty at issue in this case as non-discretionary at page 15 of their opening brief and elsewhere.

[3]  *See* "Oil and Natural Gas Sector: Emission Standards for New, Reconstructed and Modified Sources," https://www.epa.gov/sites/production/files/2020-08/documents/ frn_oil_and_gas_review_2060-at90_final_20200812_admin_web.pdf (last accessed on August 14, 2020), at 5-8.

Moreover, while the Court should dismiss the case without reaching the merits, EPA did not unreasonably delay its development of Methane Guidelines.  Instead, EPA reasonably postponed preparation of Methane Guidelines during its review of the underlying Methane NSPS pursuant to Executive Order 13783 ("E.O. Review").  The underlying Methane NSPS is a necessary statutory prerequisite for finalizing Methane Guidelines.  As EPA has explained throughout the case, the E.O. Review could result in: (1) rescission of the Methane NSPS, thereby eliminating EPA's authority and obligation to issue Methane Guidelines; or (2) revision to the underlying Methane NSPS, thereby affecting the substance of Methane Guidelines.  Because of the possible impacts that the E.O. Review might have on the Methane Guidelines, EPA realized that efforts to develop Methane Guidelines before the E.O. Review was completed would likely be futile, and any time and resources devoted to those efforts would be largely or entirely wasted.  As explained more fully below, EPA's decision therefore was reasonable, and if the case is not dismissed as moot, the court should find that EPA did not unreasonably delay issuing Methane Guidelines and grant the Agency's cross-motion for summary judgment.

Finally, EPA agrees with Plaintiffs that it is most appropriate to bifurcate liability and remedy based on the unique circumstances of this case.  In the unlikely event that this case is not dismissed and EPA is found liable, EPA further agrees to submit a proposed schedule for appropriate action with respect to Methane Guidelines within 90 days after a decision on the merits.

## I.  <u>BACKGROUND</u>

### A.  Legal Background

Under Section 7411(b) of the CAA, EPA first promulgates standards of performance for *new* sources ("NSPS").  42 U.S.C. § 7411(b)(1)(B).  EPA does not promulgate performance

standards for *existing* sources. Instead, CAA Section 7411(d) requires that EPA prescribe regulations to establish procedures under which *States* submit plans to establish, implement, and enforce standards of performance for existing sources "for any air pollutant . . . to which a [federal NSPS] would apply if such existing source were a new source…." *Id.* § 7411(d)(1).[4]

Under the procedure prescribed by the implementing regulations for CAA Section 7411(d), EPA first publishes a draft emission guideline for public comment "concurrently upon or after proposal" of the pertinent federal NSPS. 40 C.F.R. § 60.22a(a). After consideration of comments on the draft guideline "and upon or after" finalization of the pertinent federal NSPS, EPA finalizes and publishes the guideline in the Federal Register. *Id.* Within three years after publication of the final guideline, each State must submit to EPA either: (1) "a plan for the control of the designated pollutant to which the emission guideline applies" that includes performance standards and compliance schedules, among other things; or (2) a certification that the State contains no existing facilities that would be subject to the NSPS if they instead were new. *Id.* §§ 60.23a(a), (b), 60.24a. EPA evaluates the completeness of state submissions within six months, and approves or disapproves those that are complete within one year thereafter. *Id.* §

---

[4] EPA fulfilled this duty in 1975, publishing regulations that established the procedure for States to follow to develop plans for controlling a "designated pollutant." 40 Fed. Reg. 53,340 (Nov. 17, 1975) (codified at 40 C.F.R. pt. 60, subpt. B). EPA defines a "designated pollutant" as any air pollutant: (1) the emission of which is subject to a federal NSPS; and (2) which is neither a pollutant regulated under CAA Section 7408(a) (*i.e.,* criteria pollutants such as ground-level ozone and particulate matter, and their precursors, like volatile organic compounds ("VOC")) or a hazardous air pollutant ("HAP") regulated under CAA Section 7412, mirroring the statutory exclusion of these pollutants from regulation of existing sources under CAA section 111(d). 42 U.S.C. § 7411(d)(1), 40 C.F.R. § 60.21a(a).

Over the years, EPA has revised its CAA Section 7411(d) implementing regulations several times, most recently on July 8, 2019. 84 Fed. Reg. 32,520 (codified at 40 C.F.R. pt. 60, subpt. Ba). The recently amended regulations at Subpart Ba, rather than Subpart B, now govern the guidelines at issue in this case.

60.27a(g).  Finally, if EPA disapproves a state's submittal or finds that a State failed to submit a

plan, the Agency promulgates a federal plan within two years thereafter.  *Id.* § 60.27a(c).

### B.     Factual Background

#### 1.     New Source Performance Standards

In June 2016 EPA published a final rule establishing both VOC and methane emission

standards for various types of new sources in the oil and gas industry ("2016 NSPS").  81 Fed.

Reg. 35,824 (June 3, 2016).  This was the first time that EPA had promulgated methane

emissions standards for this industry.[5]  The 2016 NSPS was immediately challenged by

numerous parties (including 30 States) in the U.S. Court of Appeals for the District of Columbia

Circuit ("D.C. Circuit").  *Am. Petroleum Inst. v. EPA*, No. 13-1108 (D.C. Cir. 2012)

(consolidated with challenges to the prior NSPS for the oil and gas sector).

#### 2.     Emission Guidelines

At that time, EPA did not propose a draft emission guideline for state plans that would

regulate methane emissions (the designated pollutant) from existing sources.  *See* 42 U.S.C. §

7411(d)(1); 40 C.F.R. § 60.22a(a).  However, EPA did issue an information collection request

("ICR") in November 2016 seeking information to, among other things, develop the Methane

Guidelines.  Soon after issuing the ICR, EPA started receiving numerous requests for extensions

of the response deadlines and numerous complaints from recipients regarding the scope and

applicability of the ICR.  EPA had to establish a hotline to address recipient questions and help

them respond to the ICR.  Ex. A, Fed. R. Civ. P. 30(b)(6) Deposition of EPA, at 59; Ex. B,

Deposition of Brenda Shine, at 135-38; Ex. C, Deposition of David Cozzie, at 122.

---

[5]  The term "2016 NSPS" refers to the entire rule finalized on June 3, 2016, whereas the earlier-
defined term "Methane NSPS" refers only to the standards for methane emissions that are part of
the 2016 NSPS.

Then, in late 2016 and early 2017, while EPA was still collecting data under the ICR and members of the new presidential administration were joining the Agency, some members of Congress, oil and gas industry representatives, and state attorneys general and governors were reaching out to EPA questioning whether the anticipated benefits from the ICR justified the approximately $42 million burden imposed on recipients.  Ex. A, at 57-58; Ex. B, at 135-38; Ex. C, at 121-22.

EPA subsequently announced its withdrawal of the ICR in a Federal Register notice signed by newly appointed Administrator Pruitt on March 2, 2017.  82 Fed. Reg. 12,817 (Mar. 7, 2017).   In that Notice, then-Administrator Pruitt explained that:

> The withdrawal is occurring because EPA would like to assess the need for the information that the agency was collecting through these requests, and reduce burdens on businesses while the Agency assesses such need. This also comes after the Agency received a letter on March 1, 2017 from nine state Attorneys General and the Governors of Mississippi and Kentucky, expressing concern with the burdens on businesses imposed by the pending requests.   EPA takes these concerns seriously and is committed to strengthening its partnership with the states.

*Id*.  EPA contemporaneously issued a press release announcing the withdrawal, and later posted announcements on publicly accessible Agency web pages, transmitted explanatory letters to the recipients of the ICR, and recorded an explanatory message for the Agency's ICR hotline.  Ex. A, at 96-97.  EPA ultimately collected approximately 4,500 Part 1 responses to the ICR (operator survey) and fewer than 10 Part 2 responses (detailed facility survey).  Ex. C, at 7-10.

Several weeks after the ICR was withdrawn, the President issued Executive Order No. 13783.  "Promoting Energy Independence and Economic Growth," 82 Fed. Reg. 16,093 (Mar. 31, 2017).  Among other things, Executive Order 13783 specifically ordered EPA to "review the [Methane NSPS] and any rules and guidance issued pursuant to it, . . . and, if appropriate, [] as soon as practicable, suspend, revise or rescind the guidance, or publish for notice and comment

proposed rules suspending, revising, or rescinding [the Methane NSPS]." *Id.* at 16,096, Sec. 7(a).

In accordance with this specific direction from the President, EPA initiated the E.O. Review of the 2016 NSPS (which includes the Methane NSPS) shortly thereafter. 82 Fed. Reg. 16,331 (Apr. 4, 2017). Since that time, EPA has not taken action specifically towards developing or issuing Methane Guidelines, because the E.O. Review could result in rescission of the Methane NSPS, which would eliminate EPA's authority to issue the Methane Guidelines; even revisions to the Methane NSPS could change the number and types of existing sources for which Methane Guidelines are required under 40 C.F.R. Part 60, Subpart Ba, thereby changing the scope and substantive content of the Guidelines. *See* 42 U.S.C. § 7411(d)(1); 40 C.F.R. §§ 60.21a(b), (e), 60.22a; Ex. D, Declaration of Peter Tsirigotis, dated September 27, 2019, ¶ 11; Ex. E, Declaration of Karl Moor, dated July 15, 2020, ¶ 11; Dkt. No. 48-2, at 5-7, 11, ¶¶ 1-3, 12 (Interrogatory Responses). Similarly, the U.S. Court of Appeals for the District of Columbia has been holding in abeyance legal challenges to the 2016 NSPS pending the conclusion of EPA's E.O. review. *Am. Petroleum Inst. v. EPA*, Case No. 13-1108, at Dkt. No. 1675813 (D.C. Cir.).

Based on the E.O. Review, EPA published a proposed rule on September 24, 2019, proposing two alternative sets of regulatory revisions to the 2016 NSPS. 84 Fed. Reg. 50,244. Both alternatives would have, among other things, rescinded the Methane NSPS. *See* 84 Fed. Reg. at 50,244, 50,246. The public comment period for the proposed rule closed on November 25, 2019, and EPA received in excess of 290,000 public comments, more than 2,600 of which were both substantive and non-duplicative. Ex. E, ¶ 12. EPA completed its review of those comments and submitted the draft final rule to the Office of Management and Budget on May 29 under Executive Order 12866. *Id.* ¶ 13.

On August 13, 2020, EPA completed its E.O. Review and signed the Final Rule that, among other things, rescinds the Methane NSPS. *Supra* n.3. The Final Rule, and thus the rescission of the Methane NSPS, will take effect upon publication in the Federal Register. *Id.* The Final Rule is reviewable only in the D.C. Circuit, and petitions for review must be filed within 60 days of its publication. 42 U.S.C. § 7607(b)(1).

### 3.    Litigation Background

Plaintiffs filed their respective complaints on April 5 and May 30, 2018, asserting claims that EPA has unreasonably delayed issuing the Methane Guidelines. Dkt. Nos. 1, 20. EPA answered on July 31, 2018, Dkt. No. 29, and the parties subsequently engaged in discovery. EPA provided initial and amended disclosures under Federal Rule of Civil Procedure 26(a) that included the relevant portion of Executive Order 13783 and discussed the Agency's "ongoing efforts to prepare a proposed rule for publication that would propose to substantially revise or rescind the methane standards in the June 2016 NSPS as contemplated by Executive Order No. 13783 . . . 82 Fed. Reg. 16093, 16096 (March 31, 2017)." *See* Dkt. No. 48-4, at 3, 5.

EPA notified Plaintiffs and the Court when the Proposed Rule was signed on August 28, 2019, and moved to stay the remaining discovery and summary judgment briefing on the ground that the case was likely to be mooted if the Proposed Rule was finalized as proposed. Dkt. Nos. 58 (notice of proposed rulemaking), 59 (motion to stay). The Court granted that motion in part and vacated the initial summary judgment schedule, but denied the motion in part with respect to the pending discovery. Dkt. No. 68.

Document discovery closed in late November 2019, and depositions concluded in March 2020. EPA also has kept the Court and the parties apprised of the Agency's rulemaking progress through status reports. EPA alerted the Court in its May 15, 2020 status report that the Proposed

Rule likely would be finalized by the end of July 2020, a month later than originally anticipated. Dkt. No. 77.  Plaintiffs then moved to reinstate summary judgment briefing over EPA's objection, despite the fact that it was likely the case would soon be mooted.  Dkt. No. 78.  The Court established a briefing schedule under which briefing will close on October 2, 2020.  Dkt. No. 83.

## STANDARD OF REVIEW

Ordinarily, a district court will grant summary judgment when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Courts play a different role, however, where agency action or inaction is at issue.  Where final agency action is at issue, the district court instead sits as an appellate tribunal to determine, based on the administrative record, whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)).  Review of "an agency's inaction . . . is still more limited." *Citizens for Responsibility & Ethics in Washington v. SEC*, 916 F. Supp.2d 141, 145 (D.D.C. 2013).  When resolving claims that agency action was unreasonably delayed, the district courts "carry[] forward the traditional practice . . . of writs of mandamus."  *Norton v. SUWA*, 542 U.S. 55, 63 (2004); *see Telecomm. Research & Action Ctr. v. FCC*, 70 F.2d 70, 79-80 (D.C. Cir. 1984) (hereafter "*TRAC*"); *Democracy Forward Found. v. Pompeo*, Case No. 1:19-cv-1773, 2020 WL 4219817 *2 (D.D.C. July 23, 2020) (quoting *Norton v. SUWA*).  In the D.C. Circuit, district courts evaluate the reasonableness

of an agency's alleged delay using the mandamus factors established in *TRAC*.  750 F.2d at 79-80.

## ARGUMENT

### I.    THIS CASE IS NOW MOOT AND SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

This case should now be dismissed for lack of subject matter jurisdiction because the Final Rule has rendered the case moot.  More specifically, the Final Rule has eliminated both EPA's obligation and its authority to issue the Methane Guidelines by rescinding the Methane NSPS.  Under CAA section 7411(d) and its implementing regulations, EPA promulgates guidelines for existing sources "for any pollutant . . . *to which a [federal NSPS] would apply* if such existing source were a new source."  42 U.S.C. § 7411(d) (emphasis added).  States then establish standards of performance for existing sources in state plans that must be consistent with EPA's guidelines.  *See* 40 C.F.R. § 60.23a.  EPA is only required to publish guidelines for "designated pollutants," which are "any air pollutant, the emissions of which are *subject to a standard of performance for new stationary sources*," and which meet certain other statutory criteria not relevant here.  *Id.* § 60.21a(a) (emphasis added).  Because the Final Rule rescinded the Methane NSPS, methane is no longer a "designated pollutant" and EPA no longer has an obligation or authority to issue Methane Guidelines.

The only remedy the Court could have granted Plaintiffs in this unreasonable delay case would have been an order establishing a schedule for EPA to fulfill its former obligation to issue Methane Guidelines.  *See* 42 U.S.C. § 7604(a) (granting district courts "jurisdiction to compel . . . agency action unreasonably delayed"); *New York Public Interest Group v. Whitman*, 214 F. Supp.2d 1, 3-4 (D.D.C. 2002); *Sierra Club v. Browner*, 130 F. Supp.2d 78, 89-90 (D.D.C. 2001), aff'd, 285 F.3d 63 (D.C. Cir. 2002).  Because EPA no longer has an obligation or the authority to

issue such guidelines, the Court can no longer award relief that would redress Plaintiffs' alleged injuries. *See Izaak Walton League of Am. v. Johnson,* 400 F. Supp.2d 38, 41-42 (D.D.C. 2005) (internal citations omitted).

For the short time before the Final Rule is published in the Federal Register, at which time the Final Rule takes effect, the case is prudentially moot because "it is so unlikely that the court's grant of [a remedy] will actually relieve the injury" of which Plaintiffs complain. *See Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019-20 (D.C. Cir. 1991) (internal citations omitted). Once the Final Rule becomes effective, that "intervening event [will] make it impossible to grant [Plaintiffs] effective relief" under 42 U.S.C. § 7604(a), as no live controversy will remain. *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008); *see Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011). At that time, the case will be moot under Article III of the Constitution, and the Court must dismiss it at that time without reaching the merits. *Already, LLC v. Nike, Inc*., 568 U.S. 85, 90-91 (2013) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) and *Alvarez v. Smith*, 558 U.S. 87, 92-93 (2009)); *Cierco v. Mnuchin*, 857 F.3d 407, 414 (D.C. Cir. 2017). In the meantime, the Court should dismiss the case because it is prudentially moot. *See Penthouse*, 939 F.2d at 1019-20.

## II. EPA REASONABLY POSTPONED GUIDELINE PREPARATION DURING THE E.O. REVIEW.

Because the case is prudentially moot now and should be dismissed without reaching the merits, the parties should no longer need to brief either liability or remedy. Out of an abundance of caution, however, EPA details below why it decided, *after receiving Executive Order 13783*, to postpone further preparation of the Methane Guidelines. Plaintiffs are simply mistaken when they argue that withdrawing the ICR constituted a decision to halt preparation of the Methane Guidelines. EPA further explains why the decision to halt their preparation was both objectively

10

reasonable and reasonable under the six-factor test established in *TRAC*, 750 F.2d at 79-80.  If

the Court were to reach the merits of Plaintiffs' unreasonable delay claim (which it should not),

Plaintiffs' motion for summary judgment should be denied and EPA's cross-motion for summary

judgment should be granted.

    **A.**    **EPA's Decision to Postpone Guideline Development during the E.O. Review Was Objectively Reasonable.**

    As EPA has explained throughout this case, the Agency began taking initial steps to

develop Methane Guidelines around the time it issued the Methane NSPS in June 2016 and only

postponed that process after initiating the E.O. Review in April 2017.  An early step in that

guideline development process was the issuance of the two-part ICR in November 2016.  Soon

thereafter, EPA began receiving numerous complaints and requests to withdraw the ICR from

recipients, members of Congress, oil and gas industry representatives, state attorneys general,

and governors based on the ICR's scope and applicability, the difficulty of responding, and the

approximately $42 million burden on recipients.  *Supra,* at 4-5.  EPA soon had to establish a

hotline to address recipient questions and complaints and help them respond.  *Id.*  Nonetheless,

the Agency collected approximately 4,500 Part 1 responses and fewer than 10 Part 2 responses

before withdrawing the ICR in March 2017:

> The withdrawal is occurring because EPA would like to assess the need for the information that the agency was collecting through these requests, and reduce burdens on businesses while the Agency assesses such need. This also comes after the Agency received a letter on March 1, 2017 from nine state Attorneys General and the Governors of Mississippi and Kentucky, expressing concern with the burdens on businesses imposed by the pending requests.

82 Fed. Reg. 12,817 (Mar. 7, 2020); Ex. A, at 63.

    Several weeks later, before EPA could decide how to assess its need (if any) for the

remaining uncollected information, the President issued Executive Order 13783.  82 Fed. Reg.

16,093.  Among other things, that Executive Order instructed EPA to review the Methane NSPS

and "if appropriate, . . . as soon as practicable . . . publish for notice and comment proposed rules

suspending, revising, or rescinding" it.  *Id.* at 16,096 Sec. 7(a).  EPA formally initiated that

review, the "E.O. Review," on April 4, 2017.  82 Fed. Reg. 16,331.

EPA realized that, for the reasons explained *supra* at 6 and 9-10, the Agency would no

longer be authorized, much less obligated, to issue Methane Guidelines if the E.O. Review

resulted in a rule that rescinded the Methane NSPS.  In that situation, continuing to develop

Methane Guidelines would be futile and consume scarce time and other Agency resources.

Similarly, the universe of regulated sources—and therefore the substantive content of the

Methane Guidelines—was likely to change if the E.O. Review resulted in a rule that revised the

Methane NSPS.  In that situation, the substantive content of the Methane Guidelines essentially

would be a moving target until the E.O. Review concluded.  And again, ongoing efforts to

develop Methane Guidelines could be rendered partially or entirely futile.

For both of these reasons, EPA decided not to take *any* further steps specifically towards

developing Methane Guidelines in parallel with the E.O. Review.  This included the assessment

of whether additional information actually needed to be collected under the ICR.  Dkt. No. 48-2,

at 10-11 (Response to Interrogatory No. 10).  EPA explained this decision in its written

discovery responses:

> EPA has not taken *any action* specifically towards developing or issuing
> guidelines for existing oil and natural gas sources since the Agency initiated the
> E.O. Review. Because the E.O. Review could result in the suspension, revision,
> or rescission of the methane standards in the 2016 NSPS, thereby potentially
> affecting the substance of potential future guidelines for existing oil and natural
> gas sources, and/or eliminating or curtailing EPA's authority to issue such
> guidelines, EPA at this time does not intend to issue such guidelines or to take
> actions specifically toward developing and issuing such guidelines before
> completing the E.O. Review.

Dkt. No. 48-2, Feb. 28, 2019, at 5-6 (Response to Interrogatory No. 1) (emphasis added); *see id.* at 10-11 (Response to Interrogatory No. 10).  EPA reiterated this in its September 2019 motion to stay this case, in its recent position paper defending assertions of the deliberative process privilege for five documents, and its opposition to summary judgment briefing on the cusp of issuing the Final Rule.  Dkt. No. 59, at 4, 8-9, 10 & n.8 (Motion to stay); Dkt. No. 75, at 3-4 (Position paper); Dkt. No. 80, at 1-3 (Opposition to motion for briefing schedule).  Plaintiffs are simply incorrect when they argue that EPA "reversed its decision to issue [Methane Guidelines]" when it withdrew the ICR (as opposed to merely postponing their development), and that EPA has not explained why it did not take action on the Guidelines in parallel with the E.O. Review. *Id.* at 19, 22-26.

In sum, withdrawing the ICR did not halt EPA's development of the Methane Guidelines or prevent the Agency from pursuing them.  Instead, Executive Order 13783—which EPA received just three weeks after withdrawing the ICR—and the intervening E.O. Review caused EPA to postpone that process.  And EPA's concerns were well founded, as the E.O. Review led to, among other things, the Proposed Rule to rescind the Methane NSPS on two alternative grounds.  *Supra,* at 6-7.  After a public comment process in which the Agency received over 290,000 comments, more than 2,600 of which were substantive and non-duplicative, and inter-agency review coordinated by the Office of Management & Budget, EPA signed the Final Rule on August 13, 2020.  *Id.*  As EPA anticipated was a distinct possibility, the E.O. Review resulted in a Final Rule that rescinded the Methane NSPS.  Had EPA taken any actions towards issuing the Methane Guidelines in the interim, those actions would have been rendered futile and all time and other resources invested in them would have been wasted.  The same would have been true of time and resources expended by the regulated community had EPA required additional

information under an ICR, and later by States as they began developing plans in response to the

Methane Guidelines before the Methane NSPS were rescinded.  EPA's decision to postpone

action on the Methane Guidelines during the E.O. Review was therefore eminently reasonable.

    **B.**    **EPA's Decision Also Was Reasonable Based on the Factors Established in the D.C. Circuit's *TRAC* decision.**

Contrary to Plaintiffs' allegations, EPA's decision to postpone action on the Methane

Guidelines until the E.O. Review was complete also is reasonable under the factors established in

the D.C. Circuit's *TRAC* decision: (1) the time agencies take must be governed by a "rule of

reason"; (2) whether Congress has provided a timetable or other indicia of the speed with which

it expects the agency to proceed in the enabling statute; (3) whether alleged delay occurs in the

sphere of economic regulation versus human health and welfare; (4) the effect of expediting a

delayed action on agency activities of a higher or competing priority; (5) the nature and extent of

the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind

agency lassitude in order to hold that agency action is 'unreasonably delayed.'"  *TRAC,* 750 F.2d

at 79-80 (numerous internal citations omitted).  District courts use these "*TRAC* factors" to

evaluate the reasonableness of alleged delay under 42 U.S.C. § 7604(a).  *See, e.g.*, *Didban v.*

*Pompeo*, 435 F. Supp.3d 168, 175 (D.D.C. 2020); *Geneme v. Holder*, 935 F. Supp.2d 184, 192

(D.D.C. 2013).

    **1.**    **EPA's decision to postpone development of the Methane Guidelines pending completion of the E.O. Review was governed by a "rule of reason."**

EPA's decision to postpone developing Methane Guidelines until the E.O. Review

concluded was informed by the Agency's well-reasoned and clearly articulated assessment of the

several possible outcomes of the review it was required, as directed by the President, to perform

under Executive Order 13783, and their potential impacts on the Methane Guidelines.  As

14

detailed *supra* at 11-14, it simply made no sense for EPA to expend agency time and resources developing guidelines—much less require the States and the regulated community to expend significant amounts of their own time and resources—while EPA had reason to believe that it could lose its authority to issue the guidelines altogether and while the substantive content of the guidelines was uncertain due to potential modifications to the underlying Methane NSPS.  EPA firmly believes that that decision was reasonable given the unique circumstances presented by the E.O. Review.

Plaintiffs' arguments at pages 21-26 and 34-39 of their opening brief not only lack merit, but also are inapposite and outside the scope of this lawsuit, much less the first *TRAC* factor.  In these portions of their opening brief, Plaintiffs ask the Court to assess the reasonableness of the decision at issue—postponing development of the Methane Guidelines until the E.O. Review concluded—based on this Court's assessment of the reasonableness of *different* EPA actions that are not properly before this Court now or at any other time (*e.g.*, the E.O. Review itself, proposed and final administrative stays of limited aspects of the 2016 NSPS, and the Proposed Rule (which now has been superseded by the Final Rule).  First, it is black letter law that agency actions stand or fall on the rationale proffered by that agency, and EPA's liability defense therefore stands or falls on the basis that EPA has clearly articulated in sworn interrogatory responses, sworn declarations, and Fed. R. Civ. P. 30(b)(6) testimony throughout this case and concurrently with the E.O. Review.  *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50 (internal citations omitted); *see e.g., Fisher v. Pension Benefit Guaranty Corp.*, __ F. Supp.3d __, 2020 WL 3402337 *6 (D.D.C. June 19, 2020) (citing *NAACP v. Trump*, 315 F. Supp.3d 457, 467 n.7 (D.D.C. 2018)) (contemporaneous agency explanations are properly considered).  For this reason

alone, Plaintiffs' arguments are inapposite and cannot be used to challenge the reasonableness of EPA's decision to postpone preparing Methane Guidelines until the E.O. Review concluded.

Moreover, Plaintiffs cannot seek a district court ruling regarding the reasonableness of those different Agency actions in the guise of an unreasonable delay suit seeking a deadline for preparation of the Methane Guidelines. The only *bona fide* issue that was properly before this Court—until the case was mooted—was whether EPA unreasonably delayed issuing the *Methane Guidelines*. Moreover, the different EPA actions cited by Plaintiffs could not be challenged in this Court, even in separate lawsuits. Clean Air Act section 7607(b)(1) specifies that NSPS and amendments thereto (*e.g.,* the Final Rule) and other nationally applicable rules and final actions taken by EPA can only be challenged in the D.C. Circuit within 60 days after their publication in the Federal Register. 42 U.S.C. § 7607(b)(1); *see Izaak Walton League,* 400 F. Supp.2d at 41-42 (internal citations omitted). Indeed, the 2016 NSPS and EPA's 90-day administrative stay of limited aspects of the 2016 NSPS already *were* challenged in the D.C. Circuit, and the D.C. Circuit has exclusive jurisdiction over any objections Plaintiffs have to the Final Rule. *See Am. Petroleum Inst. v. EPA*, No. 13-1108 (D.C. Cir. 2012) (consolidated challenges to 2016 NSPS with challenges to prior NSPS for the oil and gas sector); *Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017) (challenge to the 90-day administrative stay of limited aspects of the 2016 NSPS).

Further, Plaintiffs' reliance on EPA's withdrawal of the ICR and their numerous invitations to the Court to opine as to its reasonableness is a red herring and a distraction from EPA's stated reason for postponing development of the Methane Guidelines—the E.O. Review. Withdrawing the ICR could not have halted guideline development absent a separate agency decision to that effect, because neither CAA section 111(d) nor its implementing regulations

16

require an ICR as part of the guideline development process.  In addition, the Federal Register notice announcing the ICR withdrawal clearly stated that the purpose for the withdrawal was to enable EPA to "assess the need for the information that the agency was collecting through these requests, and reduce burdens on businesses while the Agency assesses such need."  82 Fed. Reg. 12,817.  That notice never mentioned the Methane Guidelines, much less expressed any intention to halt their development.  Moreover, none of the materials that Plaintiffs cite at pages 22-26 and 34-36 of their opening brief establish that the ICR was withdrawn for any reason other than the reason stated in the Federal Register notice.  As such, Plaintiffs' claims that EPA reversed its decision to issue Methane Guidelines or otherwise halted its work on Methane Guidelines is entirely unsupported.

For all of these reasons, the only *bona fide* inquiry with respect to the first *TRAC* factor is whether EPA's decision to postpone developing the Methane Guidelines during the E.O. Review was governed by a rule of reason.  Clearly it was, as EPA has explained throughout this case, and the first *TRAC* factor therefore weighs heavily in favor of EPA's decision.

### 2. Congress provided no timetable for the development of the Methane Guidelines.

Contrary to Plaintiffs' claim that Congress intended EPA to act promptly to develop guidelines for existing sources, Congress provided no such directive.  Clean Air Act section 7411(d) merely instructs EPA to promulgate regulations establishing a procedure under which States submit plans establishing performance standards for existing sources.  EPA did so in 1975 by promulgating 40 C.F.R. Part 60, Subpart B.  40 Fed. Reg. 53,340 (Nov. 17, 1975).  In turn, the current implementing regulations merely say that proposed guidelines can be issued "[c]oncurrently upon or after" the underlying NSPS are proposed, and that final guidelines can be issued "upon or after" the NSPS is finalized.  40 C.F.R. § 60.22a(a).  To the extent this

17

language speaks to the timeframe for guidelines, it clarifies that there is no preferred time frame for proposing or finalizing them.[6] Indeed, the 1989 rule that amended 40 C.F.R. § 60.22 to allow guidelines to be proposed "[c]oncurrently upon or after" NSPS was expressly intended to "provide EPA the *flexibility* to publish draft guidelines at the same time or after [NSPS] are proposed." 54 Fed. Reg. 52,188/2-3 (Dec. 20, 1989) (emphasis added).

In contrast, Congress imposed clear deadlines on EPA in an earlier subsection of the very same CAA provision—42 U.S.C. § 7411(b)(1)(B). In that earlier subsection, Congress requires EPA to propose NSPS within one year after listing a new category of stationary sources that cause or contribute to air pollution that may harm human health or welfare, and further requires EPA to finalize such NSPS within one more year. Clearly then, when Congress intended that EPA act within particular timeframes, it expressly imposed that requirement in the statutory text.

Plaintiffs' argument that Congress intended to limit delays in guideline preparation to three months also lacks merit. Dkt. No. 85-2, at 18-19. Clean Air Act Section 7607(d)(7)(B) among other things allows EPA to stay the effectiveness of a challenged final rule or procedure for up to three months during reconsideration. 42 U.S.C. § 7607(d)(7)(B). On its face, this provision does not apply to the Methane Guidelines, which were never drafted or proposed, much less finalized, and therefore have never been challenged or reconsidered. Plaintiffs implicitly admit this when they try to characterize EPA's decision to postpone preparing the Methane Guidelines as a stay of the now-rescinded Methane NSPS. Dkt.No. 58-2, at 19-20.

---

[6] Plaintiffs also are mistaken when they argue that EPA customarily issues guidelines concurrently with an NSPS. Dkt. No. 85-2, at 21& n.4. For example, nearly six years passed between issuance of the NSPS for sulfuric acid mist (36 Fed. Reg. 24,876 (Dec. 23, 1971)) and the associated guidelines (42 Fed. Reg. 55,796 (Oct. 18, 1977)), and more than four years passed between issuance of the NSPS for primary aluminum plants (41 Fed. Reg. 3826 (Jan. 26, 1976)) and the associated guidelines (45 Fed. Reg. 26,294 (Apr. 17, 1980)).

That characterization makes no sense, because the Methane NSPS—as their name clearly indicates—are standards for *new* sources.  In contrast, the Methane Guidelines would have instructed States as the States developed plans imposing standards for *existing* sources.  Nothing about the development of the Methane Guidelines, or lack thereof, would have any effect whatsoever on the regulation of new sources by the Methane NSPS.

While Plaintiffs clearly would have preferred that EPA issue Methane Guidelines more swiftly, they do not (because they cannot) identify any specific, applicable timeframe in the CAA.  The second *TRAC* factor therefore weighs in favor of EPA's decision to postpone developing the Methane Guidelines until the E.O. Review concluded.

3. **The interests at issue do not weigh against EPA's decision to postpone development of the Methane Guidelines pending completion of the E.O. Review.**

With respect to the third and fifth *TRAC* factors,[7] whether the action at issue concerns human health and welfare and the interests allegedly prejudiced by delay, EPA acknowledges that—had the Methane NSPS not been rescinded—the Methane Guidelines would have assisted *States* as the *States* regulated methane emissions from existing sources in their jurisdictions. EPA disputes Plaintiffs' allegations of harm in their opening brief, however.  As Plaintiffs admit at pages 42-43 of their opening brief, and the State of Colorado admits in its *amicus* brief at 5-11, some States have been regulating methane emissions from existing sources for many years without Methane Guidelines.  States therefore have not been prejudiced by the alleged delay, and

---

[7]  The fourth *TRAC* factor, the effect of expediting agency action on competing or higher priorities, is not pertinent to this case.  EPA has taken the position throughout this case that competing priorities and resource limitations did not factor into the Agency's decision to postpone developing the Methane Guidelines.

they do not need Methane Guidelines to prevent harm to themselves or to their citizens that they attribute to methane emissions from existing sources.

Moreover, it is not reasonable to expect guideline-related emission reductions until approved State plans actually are implemented, and States do not even have to submit plans for EPA review until three years after final guidelines are issued.  *See* 40 C.F.R. §§ 60.23a(a), (b), 60.24a.  EPA also has up to 18 months to determine that State submittals are complete and then approve or disapprove them; if any plan is disapproved, EPA has another two years thereafter to promulgate a Federal Plan.  *Id.* § 60.27a(b).  In addition, States can allow existing sources at least two years from plan submission, and in some cases more time, to come into compliance once their plans are approved by EPA.  *Id*. § 60.24a(d).  Assuming solely for the sake of argument that EPA was on the cusp of finalizing Methane Guideline when Executive Order 13783 issued—which EPA clearly was not—proposed state plans would not have been due to EPA for a completeness determination and subsequent review until early *this summer*. Therefore, it could be another two years (and longer still if EPA had to issue a Federal Plan) before there would be any Guideline-related emission reductions.  Consequently no harm whatsoever could reasonably be attributed to a lack of Methane Guidelines right now or even in the near future.[8]  The allegations of harm in Plaintiffs' opening brief are therefore both inaccurate and misleading.

---

[8]   Plaintiffs also are mistaken to the extent they attribute harm from emissions of HAP and VOC to the lack of Methane Guidelines.  Dkt. No. 85-2, at 29-30.  As explained *supra* at n.4, these pollutants are expressly excluded from regulation under 42 U.S.C. § 7411(d) and its implementing regulations.

For all of these reasons, the third and fifth TRAC factors do not weigh against the reasonableness of EPA's decision to postpone developing the Methane Guidelines until the E.O. Review concluded.

### 4. There was no impropriety in EPA's decision to postpone development of the Methane Guidelines.

The sixth TRAC factor—that the court can find agency action was unreasonably delayed even absent an improper motive—also does not weigh against EPA.   EPA's decision to postpone development of the Methane Guidelines was based upon the Agency's understanding that any actions taken with respect to those guidelines could be rendered futile, in whole or in part, by rules issued pursuant to the E.O. Review.   Plaintiffs' contrary arguments boil down to fundamental disagreement with the Methane NSPS-related requirements that the President imposed on EPA through Executive Order 13783.   Because of this disagreement, Plaintiffs consider EPA's efforts to fulfill those requirements to be improperly motivated.   That simply is not correct, however, since EPA is an executive agency which cannot disregard orders from the Chief Executive.   *See Sherley v. Sebelious*, 689 F.3d 776, 784-85 (D.C. Cir. 2012) (citing *Bldg. & Const. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32-33 (D.C. Cir. 2002)) ("[A]s an agency under the direction of the executive branch, [EPA] must implement the President's policy directives to the extent permitted by law.").   Instead, EPA's decision not to squander agency resources on Guideline-related efforts that could be rendered futile by the E.O. Review was motivated by practicality and the need to responsibly steward scarce resources.

Plaintiffs cannot nullify EPA's reasoned explanation for postponing guideline development by hypothesizing an elaborate scheme to forestall issuance of the Methane Guidelines through the ICR withdrawal, the E.O. Review and Final Rule, and stays of the 2016 NSPS.   Dkt. No. 85-2, at 34-39.   Aside from being wildly improbable, this hypothesis ignores the

fact that each action had its own clearly articulated purpose—which was not forestalling Methane Guidelines.  As explained *supra* at 4-5 and 11-14, EPA withdrew the ICR to assess the need for the remaining information versus the nearly $42 million burden imposed on its recipients.  The Chief Executive imposed the E.O. Review on EPA to assess, among other things, the consistency of the 2016 NSPS with policies expressed in Executive Order 13783, with the Final Rule being a product of that review.  Finally, the administrative 90-day stay, and the proposed two-year stay that EPA never finalized,[9] both pertain to certain standards for *new sources* in the 2016 NSPS that EPA was reconsidering pursuant to numerous administrative petitions filed under CAA Section 7607(d)(7)(B).  All of those actions were separate and independent of EPA's duty to issue Methane Guidelines for *existing sources*, and Plaintiffs' hypothesis simply does not withstand scrutiny.

For all of these reasons, there is no "disconnect between the decision made and the explanation given," as there was in the *Department of Commerce v. New York* case that Plaintiffs cite at page 32 of their opening brief. 139 S. Ct. 2551, 2575 (2019).  And as that court emphasized, "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons."  *Id.* at 2573.[10]  The present situation also differs significantly from *Tummino v. Von Eschenbach*, where a disconnect between the records of FDA's review of an application for over-the-counter drug access and the stated rationale for

---

[9] Also, in *Clean Air Council v. Pruitt*, the Court "emphasize[d] that nothing in [its opinion in vacating the 90-day administrative stay] in any way limits EPA's authority to reconsider the final rule and to proceed with its [proposed two-year stay]."  862 F.3d at 14.

[10] The *New York* case is also inapposite because it does not address agency action allegedly delayed (*i.e.,* not taken) and the *TRAC* factors under which alleged delay is evaluated.  Instead, that decision addresses final agency action and the completely different "arbitrary and capricious" standard applied to the accompanying administrative record. 139 S. Ct. 2551 (2019).

the agency's disposition of that application prompted the court to allow discovery beyond the administrative record.  427 F. Supp.2d 212, 231 (E.D.N.Y. 2006).  Here, in contrast, Plaintiffs cannot point to any evidence (because none exists) contradicting EPA's clear and consistent statement—in sworn interrogatory responses, Fed. R. Civ. P. 30(b)(6) testimony and declarations and filings—that the Agency decided to stop developing Methane Guidelines until the E.O. Review concluded to avoid squandering resources on efforts that the E.O. Review likely would render futile.

Moreover, Plaintiffs' allegations that the basis for the Proposed Rule rescinding the Methane NSPS is pretextual are not properly before this Court, and the cases that Plaintiffs cite in support of those allegations therefore are inapposite.  *See* Dkt. No. 85-2, at 37-39.  The final version of that rule was signed on August 13, 2020, and the D.C. Circuit has exclusive jurisdiction over objections to the Final Rule.  42 U.S.C. § 7607(b)(1); *see also Izaak Walton League,* 400 F. Supp.2d at 41-42 (internal citations omitted).  Moreover, *this case* has nothing to do with potential judicial review of the Final Rule in the D.C. Circuit, or related arguments over which the D.C. Circuit has exclusive jurisdiction.  This case is about whether EPA reasonably decided to postpone issuing the *Methane Guidelines* for the forthright and practical reasons that EPA has articulated throughout this case and the concurrent E.O. Review.

As the sixth *TRAC* factor instructs, the Court need not find that EPA acted improperly or with malicious intent in order to find that the Agency's decision was not reasonable.  For all of the reasons discussed above, there simply is no credible basis to conclude that EPA engaged in an elaborate and improper scheme to avoid issuing the Methane Guidelines. The sixth *TRAC* factor therefore simply is not relevant in this case.

* * *

For all of the foregoing reasons, if the Court does not find that the case is moot, the Court should find that EPA reasonably decided to postpone development of the Methane Guidelines until after the E.O. Review was complete.  Plaintiffs' motion therefore should be denied on the merits and EPA's cross motion for summary judgment should be granted.

## III.    THE COURT SHOULD BIFURCATE LIABILITY AND REMEDY AS PLAINTIFFS PROPOSE.

In their opening brief, Plaintiffs ask the Court to bifurcate the liability and remedy phases of this case.  More specifically, Plaintiffs ask the Court to instruct EPA to submit its proposed schedule within 30 days if the Court were to issue a decision finding EPA liable, at which time Plaintiffs would voice their objections thereto and the Court would establish a schedule for EPA action with regular status reporting.  *See* Dkt.No. 85-2, at 39-42.  While parties customarily brief liability and remedy simultaneously in unreasonable delay suits under CAA section 304(a), 42 U.S.C. § 7604(a), EPA agrees that bifurcating liability and remedy is most appropriate in this particular case.

Remedy briefing in unreasonable delay suits is lengthy, time-consuming, and is unnecessary in this case now that it has been mooted by the Final Rule.  While EPA does not agree with Plaintiffs' general representations regarding guideline development at pages 41-44, it makes no sense to expend the parties' and the Court's resources parsing the steps and associated time frames for the guideline development process.  In the unlikely event that the case is not found to be moot, and EPA is found liable, EPA therefore requests that the Court bifurcate liability and remedy as Plaintiffs request and instruct the Agency to submit a proposed schedule within 90 days thereafter, rather than 30.

In its Rule 30(b)(6) deposition, in its interrogatory responses, and in a sworn declaration from the head of the EPA program that would have prepared the guidelines at issue, EPA

detailed the shortest possible time frames within which it could issue Methane Guidelines:  a minimum of 90 days to determine whether a new ICR would be necessary, after which the Agency requires either a longer (including an ICR) or a shorter (without an ICR) time frame to develop and issue Methane Guidelines.  Ex. A, at 245-55 & Exhibits 49-50.  Plaintiffs' 30-day proposal is based on an erroneous and unsubstantiated allegation that EPA could instead determine whether or not an ICR is needed within 30 days, rather than 90.  To avoid having to make a hasty and potentially inaccurate determination that might compromise any future guidelines, EPA would need to begin assessing its need for an ICR far enough in advance of this Court's decision so that the Agency could complete that assessment within 30 days post-decision.[11]

This is an absurd position to place EPA in, not only because EPA reasonably anticipates that the case will be found moot under Article III for the reasons discussed *supra* at 9-10, but also because the Agency reasonably anticipates that it will not be found liable even if the case is not moot.  Moreover, based on the Final Rule, EPA does not believe that it even has the authority to issue Methane Guidelines.  Hence, all time and resources devoted to such efforts prior to a merits decision would be wasted.  EPA therefore requests that, if the case is not dismissed and EPA is found liable, the Agency be instructed to submit a proposed schedule within 90 days after a decision on the merits for whatever action is appropriate with respect to Methane Guidelines at that time.

---

[11]  The Court indicated during the June 18, 2020, conference and in its Order of June 18, 2020 (Dkt.No. 83), that the parties' cross motions for summary judgment would not be resolved before January 8, 2021, and possibly later.

## **CONCLUSION**

For all of the above reasons, Plaintiffs' motion for summary judgement should be denied

and EPA's cross-motion for summary judgment should be granted.

Respectfully Submitted,

United States Department of Justice
Environment & Natural Resources Division

Dated:  August 14, 2020                       /s/ Heather E. Gange
                                             HEATHER E. GANGE
                                             D.C. Bar 452615
                                             Environmental Defense Section
                                             P.O. Box 7611
                                             Washington, DC 20044
                                             Tel. 202.514.4206
                                             Heather.Gange@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2020, I caused a copy of the foregoing document to be served by the Court's CM/ECF system on all counsel of record in this matter as more fully reflect in the ECF notice of filing.


/s/ Heather E. Gange
Heather E. Gange